The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD ROSS HANSEN and<br>DIANE ERDMANN,<br><br>Defendants. | NO. CR 18-92RAJ<br><br>**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE RELATED TO NORTHWEST TERRITORIAL MINT BANKRUPTCY**<br><br><u>**Oral Argument Requested**</u><br><br>Noted: May 7, 2021 |

## I.    INTRODUCTION

The government files this motion *in limine* to exclude certain evidence about the ongoing Northwest Territorial Mint (NWTM) bankruptcy and the Bankruptcy Trustee, Mark Calvert. Mr. Calvert will not be a government witness. The NWTM bankruptcy case has lasted over five years and has been very complex, with more than 2100 pleadings. Many, if not most, of the issues from the bankruptcy case are not relevant to this case. Still, Defendants have both indicated that they will seek to raise issues related to the NWTM bankruptcy and the Bankruptcy Trustee at trial. Even though the government will not call Mr. Calvert, defense has indicated it will call Mr. Calvert at

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 1

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  trial.  Without an order from the Court, Defendants threaten to turn this case into a mini-

2  trial on the Trustee's administration of the bankruptcy estate.

3  **II.     BACKGROUND**

4       **A.  The Criminal Case**

5       Ross Hansen was the founder, former president, and CEO of NWTM, a precious

6  metals business based in Federal Way.  Mr. Hansen controlled most aspects of the

7  NWTM business, while Diane Erdmann was the NWTM Vault Manager.  Under Mr.

8  Hansen and Ms. Erdmann's leadership from at least 2009 until April 2016, NWTM

9  offered gold and silver bullion in direct sales to "bullion customers;" NWTM offered

10 secure bullion storage for its "storage customers;" and NWTM offered payment in the

11 form of additional bullion to its "lease customers" in exchange for short-term use of those

12 customers' bullion.  NWTM also had a custom minting business, where it sold custom-

13 made coins and medallions to businesses and individuals.

14      In April 2018, the grand jury returned a twenty-count indictment charging Mr.

15 Hansen and Ms. Erdmann with mail and wire fraud.  The indictment charged that Mr.

16 Hansen and Ms. Erdmann engaged in a scheme to defraud NWTM customers – bullion

17 customers, storage customers, and lease customers.[1]

18      The Defendants are charged with defrauding NWTM's bullion customers – those

19 customers who ordered bulk quantities of gold and silver bars and coins.  NWTM's

20 bullion business ceased operations in April 2016, with thousands of orders unfulfilled.

21 The Indictment charges that, prior to April 2016, Mr. Hansen and Ms. Erdmann made

22 false statements to NWTM bullion customers about: the time it would take to deliver

23 their bullion; the company's ability to fulfill their order; how the bullion customer's

24 money would be used; and the company's ability to provide refunds if requested.  Over

25 3000 bullion customers were defrauded for a loss of more than $25 million.

26

27

28

---

[1] The indictment also describes how Defendants converted large amounts of precious metal into cash in 2016 and 2017 and used the money for their benefit.

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 2

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendants are also charged with defrauding NWTM's storage customers – those customers who paid NWTM to store their customer-owned gold and silver.  This program was also terminated in 2016 and stored bullion – to the extent it was found in NWTM storage – was returned to customers.  Much of the customer-owned stored bullion was missing.  Hansen and Erdmann are charged with defrauding the storage customers by failing to keep their gold and silver bullion safe and segregated as promised.  Rather, Hansen and Erdmann used that customer-owned bullion to fulfill other orders.  They used the storage customers' money for other purposes, rather than to buy and safely store their silver or gold.  Over 50 bullion storage customers were defrauded causing a loss of more than $4 million.

Defendants are charged with defrauding NWTM's bullion lease customers by misrepresenting the safety and soundness of the business to those customers.  Like the bullion storage program, the lease program ended in April 2016.  Over 20 bullion lease customers were defrauded causing a loss of more than $5 million.

**B. The Bankruptcy Case**

At the direction of Mr. Hansen, NWTM filed for Chapter 11 (re-organization) bankruptcy on April 1, 2016.  It remains an open case.  *See In re Northwest Territorial Mint LLC*, No. 16-11767-CMA.  In total, more than 3000 creditors filed claims in the bankruptcy. On April 11, 2016, the Bankruptcy Court appointed Mark Calvert as the Chapter 11 Trustee and Calvert took control of NWTM.  The Bankruptcy Court authorized the Trustee to hire his firm Cascade Capital Group (CCG) as accountants.  Shortly after the Trustee took over, NWTM ceased bullion sales and ended the storage and lease programs.  Both Hansen and Erdmann resigned from the company soon after the Trustee took control of NWTM.

Beginning in April 2016, NWTM employees, along with individuals working for CCG, examined the customer-owned inventory to determine what stored inventory could be returned to storage customers.  In June 2016, the Trustee filed a motion to return stored inventory to 23 storage customers.  On September 21, 2016, the Court granted

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 3

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Trustee's motion.  In August 2017, the Trustee filed a second motion to return stored
2    inventory to five additional customers.  On September 1, 2017, the Court granted that
3    second motion.

4         Besides inventory, the Trustee worked to re-organize the NWTM business and
5    recover money for the business and its creditors.  Perhaps like most bankruptcies, much
6    of this work resulted in litigation.  For example, to reduce costs and keep the NWTM
7    business operating, in 2016, the Trustee sold the company's Texas location.  There were
8    multiple bidders for the Texas location and so the Trustee engaged in an auction and
9    eventually sought court approval of a break-up fee to the initial bidder.

10        The Trustee also tried to re-organize the NWTM business in Dayton, Nevada, and
11   spent considerable time and litigation on the lease (the "Dayton Lease").  In August 2016,
12   the Trustee was sued by an entity called Medallic Arts (a separate business controlled by
13   Mr. Hansen) to determine who truly controlled the Dayton Lease.  Medallic Arts also
14   claimed that the NWTM estate owed it considerable amount of money.  This litigation
15   lasted into 2017, when the lawyers for Medallic Arts voluntarily dismissed its claims
16   against NWTM and agreed to consolidate with NWTM.  The attorneys for Medallic Arts
17   were paid of hundreds of thousands of dollars from the proceeds of precious metal sales
18   by Defendant Diane Erdmann.  The Trustee also engaged in litigation over the Dayton
19   Lease with the Dayton landlord.

20        In 2016, the Trustee initiated a fraudulent transfer action against Ms. Erdmann for
21   her use of company funds to pay personal expenses on Erdmann's American Express bill.
22   This litigation resulted in a multi-day trial and the Court ordered that Ms. Erdmann repay
23   the NWTM estate approximately $430,000.

24        In 2017 and early 2018, the Trustee closed NWTM and began to liquidate its
25   assets.  As part of selling the assets, the Trustee sold and returned several coining dies
26   that were part of its custom business (dies are tools used to strike medallions or coins).
27   Some customers objected to the sale of their specific coining dies and claimed that those
28   dies should be returned rather than sold.  Again, litigation ensued.

*United States v. Hansen et al.*, CR 18-92RAJ
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 4

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In November 2018, the Trustee, CCG, and other professionals submitted fee applications for their work on the bankruptcy estate.  On October 11, 2019, the Bankruptcy Court ruled on the applications.  *See* 10/11/19 Order, ("Fee Application Order") attached as Exhibit A.  In the Fee Application Order, the Bankruptcy Court reviewed the history of the bankruptcy and the conduct of the Trustee.  The Fee Application Order found that the Trustee made inconsistent statements about his negotiations for the sale of various NWTM assets; made inconsistent statements about whether or not to maintain the Dayton Lease; made various representations about the administrative solvency of the estate and the prospects for re-organization; engaged in litigation against Hansen and Erdmann that returned little value to the estate; and overstated the number of coining dies owned by NWTM.  *See* Fee Application Order.  The Bankruptcy Court closely examined the Trustee's fee application and the billing records issued a lengthy order that reduced Mr. Calvert's fees in various categories.  For example, the Trustee requested approximately $14,000 in fees for meeting with the U.S. Trustee and the FBI, however, the order reduced those fees by 25%.  Fee Application Order, Exhibit A at 40-42.  The order made similar reductions to other various fee requests.

The Fee Application Order continued that the Trustee's "improper conduct" during the litigation warranted further reductions to his fee request.  The order found that the Trustee "misled the Court on multiple occasions, testified inconsistently on the stand, filed monthly reports with false statements, and made unauthorized payments to himself and others" and "breached his duties to the estate."  Exhibit A at 79-82.  The order denied all compensation to the Trustee (he had requested about $906,000).  Exhibit A at 82.

The Bankruptcy Court similarly reviewed the fee application of the CCG accounting firm.  It reduced the fees of various CCG employees because these fees were not sufficiently described or because an accountant was not necessary to perform the specific task.  In the end, the Bankruptcy Court reduced CCG's requested fee by $399,000 and ordered payment of $539,000.  Exhibit A at 63.

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 5

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C.  Bankruptcy/Trustee Evidence at Trial

The government acknowledges that some evidence related to the bankruptcy is admissible at trial.  The inventory of the customer stored metal conducted after bankruptcy is relevant and admissible.  The Indictment charges that Defendant failed to maintain that customer-owned precious metal in NWTM storage.  The government intends to call former NWTM and CCG employees that participated in that post-bankruptcy storage inventory.

Also, the financial condition of NWTM at the time it filed for bankruptcy is relevant to demonstrate the ability of Defendants' company to fulfill their promises to customers.  The government will call former NWTM and CCG employees to testify about the company's condition.  In its initial July 2019 expert disclosures, the government identified the CCG witnesses as fact witnesses, but in an excess of caution and to avoid litigation on the subject, the government also disclosed these CCG witnesses as potential "expert" witnesses.  The government is not calling them as expert witnesses, rather the CCG witnesses will be called to testify about facts, i.e., their review of the finances of NWTM.

The government will not call Mr. Calvert as a witness because the inventory and accounting described above was conducted by CCG employees.  On March 29, 2021, in response to a request from Defendants, the government advised counsel that it does not intend to call Calvert as a witness during its case-in-chief.  In response, Defendants have indicated that they will call Calvert in their case as a hostile witness, though the government disputes that he meets the definition of hostile witness.

While it is clear to the government that the bankruptcy is not relevant to much of the fraud case, it is equally clear that Defendants wish to make it so.  Based on conversations with defense counsel it appears that the defense will seek to admit a wide range of evidence from the bankruptcy case.  But the charges against Hansen and Erdmann concern the misrepresentations made to bullion customers, storage customers,

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 6

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and lease customers **prior to bankruptcy**.  As such, much of the bankruptcy evidence is

2   irrelevant and should be excluded.

3   **III.     ARGUMENT TO EXCLUDE EVIDENCE RE BANKRUPTCY**

4          **A.  The government does not seek to exclude all bankruptcy evidence**

5          As indicated above, the government acknowledges that some aspects of the

6   bankruptcy are relevant and may be properly admitted at trial, including evidence related

7   to the post-bankruptcy inventory of customer-stored precious metals and the financial

8   condition of the company at the time of bankruptcy – the time that Mr. Hansen and Ms.

9   Erdmann stopped working at the company.

10         **B.  The government moves to exclude or restrict the following bankruptcy-**

11             **related evidence because it would create a "trial within a trial."**

12         Other evidence about the bankruptcy should be excluded because it is irrelevant,

13  confusing, misleading, and a waste of the jury's time.  In earlier pleadings, Mr. Hansen

14  moved to exclude evidence of NWTM's 1989 Bankruptcy, noting that "allowing such

15  evidence would create a trial within a trial about an ancillary proceeding.  Bankruptcy is

16  complex."  Dkt. #201 at 8.  The same is true about the 2016 Bankruptcy and the Court

17  should exclude evidence that is improper, misleading, confusing, and a waste of time.

18      **1.  The Court should exclude the Fee Application Order**

19         The Court should exclude the 85-page Fee Application Order (attached as Exhibit

20  A), or any excerpt of the order, in this case.  The Fee Application Order – an order that

21  rules on the details of the fee applications of various bankruptcy professionals, including

22  the Trustee, accountants, and multiple Seattle law firms – is irrelevant to any issue in this

23  criminal case and should be excluded under FRE 401 and FRE 402 (relevant evidence is

24  evidence that makes a fact more or less probable; irrelevant evidence is inadmissible).

25         The Fee Application Order is further inadmissible under several other rules of

26  evidence.  The order is hearsay and does not fit into any exception.  Fed. R. Evid. 801.

27  Defense may claim that the Fee Application Order is admissible to attack the credibility

28  of its witness, Mr. Calvert, but the order is extrinsic evidence and is not admissible to

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 7

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   prove specific examples of conduct to attack a witness's character for truthfulness.  Fed.

2   R. Evid. 608(b).  Further, the order is not admissible as general propensity evidence

3   against a witness.  *See United States v. McCourt*, 925 F.2d 1229, 1236 (9th Cir. 1991)

4   (holding that FRE 404(b) applies to bar propensity evidence against a third-party witness

5   when offered by defendant to show that third party was at fault).

6       The fact that Defendant may call Mr. Calvert as its own witness does not make the

7   Fee Application Order relevant or admissible.  Otherwise inadmissible evidence cannot

8   be made relevant under the guise of impeachment.  *See United States v. Gilbert*, 57 F.3d

9   709, 711-12 (9th Cir. 1995) (citation omitted).[2]

10      Admitting another court's order would confuse the criminal jury, and it should

11  also be excluded under FRE 403.  Courts have found that prior judicial opinions that are

12  admitted as evidence "presents the danger that a jury may give the judicial

13  opinion undue weight or be confused, believing the earlier court's findings somehow

14  binding on it."  *United States v. Perry*, 857 F.2d 1346, 1351 (9th Cir. 1988).  The risk of

15  jury confusion is especially great here, as the Fee Application Order concerned whether

16  to grant the Trustee's fee application and accordingly reviewed the entire history of the

17  NWTM bankruptcy litigation.

18      Defense counsel has said that the Fee Application Order should be treated as

19  agency findings and should accordingly be admissible.  However, this is not like an

20  employment case where the same parties litigated the same issues before an agency. The

21  order deals with separate issues and different parties.  *Cf. Baldwin v. Rice*, 144 F.R.D.

22  102, 105 (E.D. Cal. 1992) (admitting agency findings when decision directly pertinent to

23  facts and when party-opponent "participated fully" in underlying process).

24      If the government tried to admit portions of various Bankruptcy Court orders, the

25  Defendants would similarly object.  The Bankruptcy Court spent years managing varied

26

27  [2] While defense may call Mr. Calvert as a witness, Mr. Calvert should not be treated as a hostile witness.

28  He is not an agent of the government.  *See* Fed. R. Evid. 611(c).

*United States v. Hansen et al.*, CR 18-92RAJ
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 8

issues and made varied rulings that the government could offer in its case.  For example, the Fee Application Order noted that at the time of bankruptcy, NWTM had "$1000 and limited assets to satisfy its operating expenses [and NWTM had] not prepared financial statements or tax returns for at least five years and had not instituted inventory controls for precious metals."  As another example, the Bankruptcy Court's April 2018 ruling that Ms. Erdmann owed NWTM $430,000 for payment of personal expenses found that "Hansen and Erdmann treated the vault like their personal piggy bank."  The Court should not allow Defendants to use the Fee Application Order differently than any other out-of-court statement.

## 2. The Court should prohibit cross-examination of government witnesses about Mr. Calvert's conduct or adverse findings against Mr. Calvert

The Court should prevent the Defendants from making this trial about the post-bankruptcy conduct of the Trustee through cross-examination of government witnesses about the conduct of Mr. Calvert.  This type of cross-examination should be precluded under FRE 403, as it would cause jury confusion, undue delay, and would be more prejudicial than probative.  Fed. R. Evid. 403.

The defense intends to attack the Trustee under the guise of attacking the government's investigation.  However, the Trustee and the CCG employees were not part of the government's investigation and should not be permitted to comment on it – rather, a witness can only fairly comment on the witness's own investigation.  Ninth Circuit courts have found that it is permissible for a defendant to inquire about the quality of an investigation "so far as it bears on the credibility, validity, or probative weight of specific evidence produced by the witness's investigation."  *United States v. Yagman*, 2007 WL 9724391, *6 (C.D. Cal. May 16, 2007), *citing United States v. Miller*, 874 F.2d 1255, 1266 (9th Cir. 1989); *United States v. Sager*, 227 F.3d 1138, 1145-46 (9th Cir. 2000).  The *Yagman* case held that a defendant may not question a government witness about aspects of the investigation "unrelated to the evidence produced by the witness's investigation." *Id.* at *6 (emphasis in original).

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 9

The same should apply here – a government witness may be cross-examined about their own work, but a witness should not be asked about aspects of the case unrelated to the witness's own investigation.  For example, the government will call former NWTM employees and former CCG employees to testify about the post-bankruptcy inventory and the post-bankruptcy financial analysis.  The defense should only be allowed to ask about the witness's own specific work, not unrelated actions of Mr. Calvert.[3]

Defendants will likely call their own witnesses to criticize the Trustee's administration of the bankruptcy estate.  Unless the witness can testify about an aspect of Mr. Calvert's work that is relevant to the criminal case, this testimony should be prohibited.  Like with the Fee Application Order, extrinsic evidence of specific examples of conduct is improper under FRE 608.  And similarly, testimony or evidence about so-called bad acts in the administration of the bankruptcy estate are not admissible as propensity evidence.  Fed. R. Evid. 404(b); *McCourt*, 925 F.2d at 1236.

**3.  The Court should exclude evidence related to the Trustee's statements about whether the estate was administratively solvent/insolvent and the Trustee's beliefs about the viability of NWTM and return to NWTM creditors**

As discussed in the Fee Application Order, the Trustee expressed differing views about the ongoing NWTM business.  At the outset of the bankruptcy, NWTM owed more than $20 million to its bullion customers and the bullion business was shut down in April 2016.  Still, the Trustee operated NWTM for more than 18 months in an attempt to reorganize the business.  During this time, there was concern about whether the NWTM estate was "administratively insolvent" meaning whether it could pay the estate's post-

---

[3] Similarly, as requested in Part III-B-1, CCG witnesses should not be cross-examined about the Fee Application Order.  This decision related to billing mistakes, not issues with the witness's performance.  If the defense were allowed to ask the CCG witnesses whether the "Court decided to reduce your fees" such an inquiry is misleading and the jury may discount the witness's testimony unfairly.

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 10

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 bankruptcy administrative fees (i.e., fees owed to attorneys and other professionals) and
2 whether the business could successfully re-organize.

3       The Court should exclude evidence about the Trustee's statements about
4 administrative insolvency of the bankruptcy estate because jurors may confuse it with
5 testimony about the insolvency of the NWTM business prior to bankruptcy.  The
6 administrative insolvency of a bankruptcy estate is concerned with the ability to pay
7 vendors **after the bankruptcy**.  The insolvency of the NWTM business concerns its
8 ability to pay **prior to bankruptcy**.  Insolvency prior to bankruptcy is relevant because
9 that is when the Defendants' made their misrepresentations to customers; the
10 administrative insolvency after bankruptcy is not relevant to Defendants'
11 misrepresentations or their fraudulent intent.

12       Likewise, the Trustee's views about the potential viability of NWTM are not
13 relevant.  The criminal case is about the NWTM bullion sales, bullion storage, and
14 bullion lease.  These NWTM business lines were shut down in April 2016.  Afterwards,
15 Trustee and the estate attempted to re-organize the custom minting part of the NWTM
16 business.  To the extent the Trustee made statements that this custom minting part of the
17 business could be viable, such statements are irrelevant to the issues at the criminal trial.

18       Further, the Court should exclude any testimony about the Trustee's belief about a
19 return to creditors.  The intent or ability to repay victims is not a defense to fraud.  *See*
20 *United States v. Treadwell*, 593 F.3d 990, 996-97 (9th Cir. 2010), *rev'd on other grounds*,
21 *United States v. Miller*, 963 F.3d 1095, 1102-03 (9th Cir. 2020).  If the Defendants' intent
22 to repay victims is not relevant, the Trustee's views on repayment by a re-organized
23 NWTM are similarly not relevant.

24       **4.    The Court should exclude evidence related to the sale of the Texas**
25 **location and the return of the custom dies.**

26       As described above, in 2016, the Trustee sold the NWTM Texas location.  The
27 Bankruptcy Court found that the Trustee misled the Court about his position as to a
28 break-up fee for the initial bidder.  In 2018, as the Trustee wound down the NWTM

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 11

1  business, he sold or returned many custom coining dies.  The Bankruptcy Court found

2  that the Trustee incorrectly stated that NWTM owned hundreds of thousands of dies and

3  told a creditor that he was going to charge a fee to return the die.  Coining dies relate to

4  the custom side of the business and not the bullion sales, or the storage and lease

5  customers.  These issues and the Trustee's statements are not relevant to any issue in this

6  case, rather, they will waste the jury's time with irrelevant details about the bankruptcy

7  case.  *See* Fed. R. Evid. 401, 402, and 403.

8  **IV.    CERTIFICATION OF COMPLIANCE WITH RULES 12(b)(7) and 23.2**

9       The undersigned certifies that, pursuant to Local Criminal Rules 12(b)(7) and

10  23.2, counsel for the government met with counsel for Mr. Hansen and Ms. Erdmann via

11  video conference on March 31, 2021.  The parties further corresponded via e-mail.

12  **V.     CONCLUSION**

13      The government respectfully requests that the Court exclude the above evidence

14  related to the NWTM Bankruptcy.

15      Dated this 19th day of April 2021.

16                                      Respectfully submitted,

17                                      TESSA M. GORMAN
18                                      Acting United States Attorney

19                                      *s/ Brian Werner*
20                                      BRIAN WERNER
21                                      BENJAMIN DIGGS
                                        Assistant United States Attorneys
22                                      700 Stewart Street, Suite 5220
                                        Seattle, Washington 98101
23                                      Telephone: (206) 553-7970
24                                      E-mail: brian.werner@usdoj.gov

25

26

27

28

*United States v. Hansen et al., CR 18-92RAJ*
Government's Motion *in Limine* To Exclude Certain Evidence Related to NWTM
Bankruptcy - 12

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970