HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

BERNARD ROSS HANSEN and
DIANE RENEE ERDMANN,

Defendants.

Case No.  CR18-0092-RAJ

**DEFENDANT ROSS HANSEN'S
RESPONSE TO GOVERNMENT'S
MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF DINO VASQUEZ
OR, IN THE ALTERNATIVE, FIND
ATTORNEY-CLIENT PRIVILEGE
WAIVED AS TO ALL DEFENDANT
COMMUNICATIONS WITH KARR
TUTTLE CAMPBELL**

NOTED ON MOTION CALENDAR:
May 7, 2021

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ)

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

**INTRODUCTION**

The evidence that the government seeks to exclude—evidence of Dino Vasquez's audit of NWTM's bullion department—is highly probative of core issues in this case. The government in this case is alleging that Ross Hansen used the bullion department at his company to "make misrepresentations to NWTM standard bullion customers about shipping time and the availability of goods." Dkt. 1 at ¶ 13. And so, two key questions in this case are: (1) *were false misrepresentations in fact being made by the NWTM bullion department?* and (2) *if so, did Ross Hansen know about them?* The evidence of Mr. Vasquez's audit goes to the heart of both of those questions. As this evidence will show, during the time of the alleged fraudulent scheme, Mr. Hansen asked Mr. Vasquez to investigate what representations were being made by his bullion department to customers about shipping times and the availability of goods. Mr. Vasquez conducted an investigation and reported back to Mr. Hansen about what he had observed. Those facts—what Mr. Vasquez observed and reported back to Mr. Hansen—are highly probative of whether misrepresentations were being made and, if so, whether Mr. Hansen was aware of those misrepresentations.

Yet the government asks the Court to exclude this evidence. In so doing, the government relies on two false premises.

The first is that Mr. Hansen wants to offer legal advice he received from Mr. Vasquez so that he can pursue a pseudo-advice-of-counsel defense. Not so. Mr. Hansen does not intend to offer any *advice* that Mr. Vasquez gave him. He instead seeks to offer only *factual evidence* about Mr. Vasquez. Specifically, he seeks to offer (1) the fact that he asked Mr. Vasquez to audit NWTM's bullion department; (2) the relevant facts that Mr. Vasquez observed during his audit; and (3) the relevant facts that Mr. Vasquez reported back to Mr. Hansen at the close of his audit. This factual evidence is probative of Mr. Hansen's knowledge of the bullion department's operations—the alleged epicenter of the fraudulent scheme in this case.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 1

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

The second false premise is that Mr. Hansen is shielding communications about Mr. Vasquez's audit behind a claim of privilege. Again, not so. Mr. Hansen has already waived privilege over any communications between himself and Mr. Vasquez's law firm that occurred prior to the completion of the audit. Mr. Hansen has withheld only seven emails between himself and Ron Friedman, all of which were sent *after* the audit was complete and do not even mention the audit.

This Court has *already ruled* that Mr. Hansen can maintain privilege over those seven withheld emails. In 2019, Mr. Hansen's prior counsel filed a motion claiming privilege over those seven emails, and otherwise waiving privilege as to Mr. Hansen's communications with Mr. Friedman and any other attorneys at Mr. Vasquez's law firm. Dkt. 63. This Court reviewed those seven emails at that time and granted the motion—ruling that Mr. Hansen can maintain his privilege over the seven withheld emails at issue in this motion, even as he waives privilege as to Mr. Vasquez's audit. Dkt. 173 at 26. The government provides no good reasons for revisiting that ruling, and the Court should decline to do so.

Without these two false premises, all the government has left are explanations for why, in its view, evidence relating to the Vasquez audit is not persuasive. But those explanations can be explored during cross examination and argued to the jury during closing; they are not a basis for excluding the evidence or waiving privilege over unrelated communications.

**RELEVANT BACKGROUND**

The government's representations of the record require a handful of clarifications:

*First*, the government's motion downplays the relevance of Mr. Vasquez's audit. The government told this Court in December that a consent decree signed by Mr. Hansen and the Washington Attorney General's Office "is at the heart of representations made to NWTM's bullion customers." Dkt. 205 at 6. The Court agreed, ruling that evidence of the consent decree was inextricably intertwined with the government's case. *See* Dkt. 213 at 4. Mr. Vasquez's audit directly pertains to that consent decree and the related representations made to NWTM's bullion customers.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 2

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

1    In fact, that is precisely what Mr. Vasquez investigated.  *See* Calfo Decl. Ex. A at 3 (describing

2    evaluation process which included observing the bullion department's compliance with various

3    notice requirements under the consent decree).  In doing so, he observed and reported back to Mr.

4    Hansen about his factual observations including: (1) that customers are provided an estimated date

5    range for product delivery; (2) that the sales representatives were telling customers about their ability

6    to obtain a refund if a delivery is delayed; and (3) the process for customer service employees to

7    notify customers about delayed orders.  *See id.*

8         *Second*, the government's motion fails to point out two key facts about the memorandum

9    that Mr. Vasquez wrote at the end of his audit: (1) the audit memorandum states clearly what the

10   scope of the audit was; and (2) the memorandum describes in detail what investigative steps Mr.

11   Vasquez undertook.  *See id.*[1]  The memorandum at no point purports to be a complete response to

12   the issues raised in the Fullington memorandum.  *See id.*  Instead, the memorandum explains at the

13   outset the issues that the audit addressed and then describes in detail what work Mr. Vasquez did

14   and what facts he observed.  *Id.*

15        *Third*, the government's motion downplays the key fact that Mr. Hansen is not withholding

16   *any* communications between himself and Ron Friedman (or any other Karr Tuttle attorney) that

17   occurred before or during the Vasquez audit.  Dkt. 63 at 7–8.  In fact, the government already

18   possesses more than 20 emails between Mr. Hansen and Mr. Friedman.  Calfo Decl. ¶ 2.  Mr.

19   Hansen's prior counsel waived privilege over those communications and all other communications

20   between Mr. Hansen and Karr Tuttle that occurred before the completion of the audit.  Those

21   communications present the full picture of the interactions between Mr. Hansen and Karr Tuttle's

22   lawyers relating to the audit.  *See generally* Dkt. 63.

23

24

25

---

[1] The government did not attach the audit memorandum to its motion.  Undersigned counsel has attached it as an exhibit to his declaration.  Calfo Decl. Ex. A.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 3

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

*Fourth*, the government's motion assumes—incorrectly—that Mr. Hansen is still claiming privilege over some communications that relate to Mr. Vasquez's audit.  He is not.  The seven withheld communications between Mr. Hansen and Mr. Friedman are from *after* the audit, and they do not mention the audit (or Greg Fullington) at all.  *See* Dkt. 64 (containing all seven withheld emails, filed ex parte and under seal).  And as Mr. Hansen's prior counsel pointed out when this issue was before the Court the first time, these seven communications took place *after* the watershed moment when Mr. Hansen learned that the government had opened an official investigation.  *See* Dkt. 63; *see also* Dkt 64.

*Finally—and perhaps most importantly*—the government's motion downplays the fact that the Court has already ruled upon the issues raised in its motion.  In 2019, Mr. Hansen's prior counsel filed a motion with this Court seeking to preserve privilege over the seven withheld communications between Mr. Hansen and Mr. Friedman, while waiving privilege as to all other Karr Tuttle communications.  Dkt. 63.  At that time, the issue of subject matter waiver was specifically briefed and ruled upon.  *See* Dkt. 63 at 7–8; Dkt. 66 at 7; Dkt. 173 at 25.  Specifically, Mr. Hansen's counsel argued that the withheld communications were not "squarely within the same specific subject matter as the Audit"—in particular because they occurred after Mr. Hansen learned of an official government investigation into his conduct.  Dkt. 63 at 8–9.  Those withheld emails, counsel argued, could therefore be maintained as privileged even if privilege were waived as to the audit, and even if evidence of the audit were introduced at trial.  *Id.* ("Even if the defense later decides to utilize the Audit at trial, fairness does not require disclosure of these post-Audit communications . . . .").  The Court granted that motion, agreeing that the waiver of privilege over the audit does not require waiver of the seven withheld emails that occurred after Mr. Hansen learned of an official government investigation into his conduct.  *See* Dkt. 173 at 25.  The Court explained:

> While Hansen has waived the privilege to many documents, the communications appear to have been made after Hansen was informed about an official investigation. Even if he disclosed some of the communications with Karr Tuttle to others, that

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 4

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

1    alone does not mean he waived the privilege to every single Karr Tuttle
2    communication . . . .

*Id.*

## ARGUMENT

**A.    Because Mr. Hansen is not offering legal advice from Mr. Vasquez, evidence of Mr. Vasquez's audit is not excludable.**

The government's first argument for excluding evidence of Mr. Vasquez's audit relies upon the premise that Mr. Hansen is seeking to offer the legal advice he received from Mr. Vasquez. Because that premise is false, the argument fails.

The government argues that Mr. Hansen, having advised the government that he is not presenting an advice of counsel defense, should not be allowed to introduce evidence that "his state of mind was affected by *advice* he received from lawyers." Dkt. 228 at 7 (emphasis added). But Mr. Hansen is not seeking to offer evidence of the *advice* he received from his lawyers. He seeks to offer only the *factual* observations of Mr. Vasquez: what Mr. Hansen asked him to investigate, what facts he learned while investigating, and what facts he reported back to Mr. Hansen.

Introducing evidence of *facts* as observed by an attorney does not implicate the advice-of-counsel defense. As the name suggests, the advice-of-counsel defense pertains to *legal advice* from an attorney. *See* Ninth Circuit Model Jury Instruction 5.10 (defendant must show he "received the attorney's *advice*" and "reasonably followed the attorney's recommended course of conduct or advice in good faith"); *see also United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984) (advice-of-counsel defense requires "evidence that the attorney advised the defendant as his counsel"). In the case relied on by the government, *United States v. Joshua*, for example, the defendants offered testimony from an attorney about the "*legal advice* he gave to them"—specifically his legal advice that they were not breaking the law. 648 F.3d 547, 550, 554 (7th Cir. 2011) (emphasis added). Mr. Hansen intends to offer no such evidence here—he seeks to offer only factual evidence, which does not implicate the advice-of-counsel defense.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 5

1   This factual evidence is highly probative of two of the key issues in this case:  (1) whether

2   NWTM was making "misrepresentations to NWTM standard bullion customers about shipping time

3   and the availability of goods," as the government has alleged; and (2) if so, whether Mr. Hansen

4   knew about it.  *See* Dkt. 1 at ¶ 13.  As reflected in his audit memorandum, Mr. Vasquez spent several

5   days—during the time of the alleged fraud—observing the interactions between NWTM's

6   employees and NWTM's bullion customers.  *See* Calfo Decl. Ex. A at 3.  And he then reported back

7   to Mr. Hansen about his observations of those interactions, reporting to him about the types of

8   representations that were being made.  *Id.*  This puts him in prime position to offer probative

9   evidence about these key issues.

10   Allowing this evidence would be consistent with the many cases in which auditors or other

11   investigators have been permitted to testify as to their factual observations, but not their specialized

12   opinions, advice, or conclusions.  In *United States v. Frantz*, for example, the Court ruled that

13   auditors could testify to "the factual observations they made during the course of their audit, to the

14   extent these matters are based on their rational perception of information and events, and do not rely

15   on specialized or technical knowledge."  No. CR 02-01267(A)-MMM, 2004 WL 5642909, at *12

16   (C.D. Cal. Apr. 23, 2004).  And in *Bank of China, New York Branch v. NBM LLC*, the Second Circuit

17   explained that the fact that a witness "has specialized knowledge, or . . . carried out the investigation

18   because of that knowledge, does not preclude him from testifying" about his factual findings, so

19   long as that testimony is "not rooted exclusively in his expertise."  359 F.3d 171, 181 (2d Cir. 2004).

20   Excluding this evidence, on the other hand, would unfairly prejudice Mr. Hansen's ability to

21   defend himself and set up an untenable double standard.  The government has indicated that it plans

22   to call three different NWTM lawyers, and to offer not just their factual observations but also their

23   legal conclusions, such as the conclusion that "NWTM and Ross Hansen are more likely than not

24   engaging in business practices that amount to fraud, misappropriation of customer funds, and Ponzi

25   scheme."  *See* Dkt. 228 at 2; *see also* Dkt. 231.  And yet the government wants to preclude Mr.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 6

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

Hansen from offering even just *factual* evidence in response.  The Court should reject that double standard, and instead adopt one consistent standard:  Mr. Hansen, like the government, should be able to introduce his lawyers' factual observations, but not their specialized legal advice or opinions. That is the only fair ruling, and the only one that the Federal Rules allow.

**B.**  **Because Mr. Hansen is not shielding communications relating to the audit, evidence of the audit is not excludable on that basis, either.**

The government's second argument for excluding evidence of Mr. Vasquez's audit relies upon the premise that Mr. Hansen is withholding communications he had with Mr. Friedman relating to the audit.  Again, because that premise is false, the argument fails.

Mr. Hansen is not withholding any communications between himself and Mr. Friedman (or any other lawyer at Karr Tuttle) that occurred prior to the completion of the audit.  In fact, the government's motion itself quotes from multiple emails between Mr. Hansen and Mr. Friedman, using those emails to argue that Mr. Vasquez's audit is not persuasive evidence. *See, e.g.*, Dkt. 228 at 8 n.2, 11:1–10.  Yet, ironically, the government in the same breath insists it cannot make those points without the remaining seven withheld emails, which it has never seen.  The Court, however, *has* seen those seven emails.  The Court in 2019 granted Mr. Hansen's motion to maintain privilege over those seven emails while waiving privilege as to the audit by Mr. Vasquez.  Dkt. 173 at 25–26. As the Court saw for itself then—and can see for itself again now, *see* Dkt. 64—the seven emails are from *after* the audit ended and do not even mention the audit.  In short, there is no unfair use of attorney-client-privilege as a sword-and-shield here.  The government already has the full picture of the communications between Mr. Hansen and Karr Tuttle relating to this audit.

**C.**   **Arguments about the persuasiveness of the audit evidence are for the jury.**

Much of the government's motion is aimed at attacking the persuasive value of the audit, but that is an issue for the jury.  Even in the expert context, "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 7

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

1    exclusion." *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).  That is even more true, here,

2    in the context of lay evidence.  The government has the evidence it would need to test the weight of

3    the audit at trial.  Indeed, throughout its motion, the government does attack the persuasiveness of

4    the audit, while quoting from the very types of communications that it says Mr. Hansen is

5    withholding.  *See, e.g.*, Dkt. 228 at 8 (quoting an email from Mr. Friedman to argue that the audit

6    was designed to create the false appearance of a good-faith response); Dkt. 228 at 10–11 (quoting

7    emails from Mr. Friedman that "make clear that the Vasquez review was part of a coordinated

8    response").  As that ironic dissonance goes to show, the government already has the evidence it

9    needs to test the persuasiveness of the audit, and should do so *at trial* through cross-examination,

10   contrary evidence, and argument.

**D.    The government's request to find privilege has been waived over the seven emails is precluded by this Court's prior ruling.**

13       The government offers no principled basis for revisiting the Court's ruling upholding Mr.

14   Hansen's claim of privilege over the seven withheld emails.  Nor would doing so be procedurally

15   proper.

16       For one, the request is really nothing but an improperly labeled motion for reconsideration

17   and should be rejected for that reason alone.  *See* CrR 12(b)(13)(B) ("A motion for reconsideration

18   shall be plainly labeled as such. . . . Failure to comply with this subsection may in itself be grounds

19   for denial of the motion.").  Mr. Hansen's motion in 2019 made clear he was strategically waiving

20   privilege over the audit so he could use it in his defense—including at trial—while maintaining

21   privilege over the seven withheld emails between himself and Mr. Friedman from after the audit.

22   *See* Dkt. 63 at 9.  The issue of subject matter waiver was specifically briefed by both parties at that

23   time, and the Court ruled upon it.  *See* Dkt. 63 at 8–9; Dkt. 66 at 7; Dkt. 173 at 25:8–14.  The

24   government now wants a second bite at the apple, but should do so through a motion for

25   reconsideration, not a motion in limine.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 8

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

The government's request is also untimely.  The parties previously agreed—and this Court ordered—that the deadline for submitting motions relating to attorney-client privilege would be January 30, 2019.  *See* Dkt. 56-1; Dkt. 62.  The government has offered no good cause for bringing this motion after that deadline.

Even setting these procedural failings aside, the Court should reject the government's request because the Court got it right the first time.  As Judge Robart has observed, "the Ninth Circuit's waiver doctrine is narrow and only covers the precise subject matter of the disclosure for which the court found privilege to have been waived."  *See REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11-0554JLR, 2013 WL 364716, at *5 (W.D. Wash. Jan. 30, 2013).  In other words, "the scope of the waiver . . . must be narrowly tailored to cover only the precise subject matter of the waived disclosure."  *Id.* at *3.

The seven withheld emails do not pertain to the same subject matter as the waived communications.  The waived communications pertain to an audit and how to respond to concerns raised by an in-house lawyer.  Dkt. 63 at 8–9.  But the withheld emails do not mention the audit or the in-house lawyer.  *See* Dkt. 64.  As the Court recognized in its ruling, the seven withheld communications instead pertain to the news that the FBI had opened an investigation into Mr. Hansen's activities.  Dkt. 173 at 25.  That is a different subject matter, and fairness certainly does not require a waiver any broader than the one the Court endorsed in its prior ruling.

Indeed, the government offers no good reasons for disturbing that prior ruling.  The government first notes that the prior ruling was "before the government interviewed Vasquez" and before Mr. Hansen put Mr. Vasquez on his witness list, Dkt. 228 at 9, but it fails to explain why either of those developments should alter the Court's finding that the withheld emails are not within the same subject matter as the waived communications.  The government then turns again to the false premise that Mr. Hansen is shielding communications with Mr. Friedman about the audit and how to respond to Mr. Fullington's memorandum.  *See* Dkt. 228 at 10–11.  Again, this is simply not

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 9

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

true.  The government already has all the communications between Mr. Hansen and Mr. Friedman about the audit and how to respond to Mr. Fullington's memorandum.  *See* Dkt. 63; Dkt. 64.

Finally, the government tries to define the waived "subject matter" as any "communications [] about [defendants'] criminal liability."  Dkt. 228 at 10.  Defining the waiver that broadly would eviscerate any limits on the subject-matter-waiver doctrine and would completely upend this Court's prior ruling.  The Court should reject the government's attempt to do so.

**E.      The government should not be permitted to insinuate that Mr. Hansen's consultation with counsel is evidence of guilt.**

Lastly, the government asks this Court to allow it to "elicit through cross examination that defendants also had other lawyers about whom they are 'keeping mum.'"  Dkt. 228 at 12.  But the Court should not allow the government to insinuate that Mr. Hansen's consultation with a lawyer— and claim of privilege over those communications—is evidence of his guilt.  Allowing that line of questioning would run counter to the bedrock principle that a person's exercise of their Sixth Amendment right to counsel is not "probative in the least of the guilt or innocence of defendants." *Bruno v. Rushen*, 721 F.2d 1193, 1194–95 (9th Cir. 1983).  Courts have also flatly rejected the notion that an assertion of privilege can create a negative inference about the substance of a communication. *See, e.g.*, *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) ("[A] client asserting the privilege should not face a negative inference about the substance of the information sought."); *see also United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir. 1999) ("[T]here is general agreement that it is improper to comment adversely on a defendant's exercise of the marital privilege, or to permit the jury to draw adverse inferences.").

In support of its contrary position, the government cites to just one case, *United States v. Blagojevich*, which was unique in several ways, and differs from this case in at least two material respects.  *See* 794 F.3d 729 (7th Cir. 2015).  First, in *Blagojevich*, counsel's *advice* to the defendant was directly placed in issue.  In *Blagojevich*, the defendant himself testified and repeatedly

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

referenced that he had spoken to one of his lawyers about whether he was "crossing a line of some sort," strongly implying that he had been assured he was not. *Id.* at 742. Here, however, Mr. Hansen does not intend to offer evidence of any *advice* he solicited from Mr. Vasquez—only facts. Second, in *Blagojevich*, the defendant was "keeping mum" about the advice he received from other attorneys *during the same time period* as the attorney whose advice he referenced in his testimony. *See id.*; *see also* Gov't Brief, *United States v. Blagojevich*, No. 11-3853, Dkt. 100 at 62 (7th Cir.). But here, the withheld communications that the government wants to reference took place *after* the audit was over.

More fundamentally, though, unlike in *Blagojevich*, the government here already has all the communications about the subject at issue. The government already has *all* the Karr Tuttle communications leading up to the audit—including more than 20 emails between Mr. Friedman and Mr. Hansen. And the government can certainly—at least from a privilege perspective—cross-examine using those emails. But the withheld communications do not relate to the audit or Mr. Fullington's memorandum, and allowing the government to suggest to the jury that they do—and that they are somehow probative of Mr. Hansen's guilt—would be highly misleading and unfairly prejudicial.

## CONCLUSION

Just the facts. That is what Mr. Hansen seeks to offer from Mr. Vasquez. Not legal opinions, not advice, just the facts that Mr. Vasquez perceived as a lay witness, facts about some of the most important issues in this case—the operations of the bullion department and what Mr. Hansen knew about them. As far as Mr. Hansen is concerned, the government should be free to do the same—to offer facts, not legal opinions, from the lawyer-witnesses it plans to call, such as Greg Fullington. *See* Dkt. 231 (Mr. Hansen's motion to exclude legal opinions from NWTM lawyers).

But that is not the government's position. It asks the Court to enforce an untenable double standard, in which it can introduce legal opinions and conclusions from the lawyer-witnesses it calls,

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 11

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

even if not designating those lawyers as experts, while precluding Mr. Hansen from offering even just *facts* from lawyer-witnesses he calls.  The Court should reject that double standard, and instead enforce the standard set by the Federal Rules:  Mr. Hansen, like the government, can introduce lay witnesses' factual observations, but not their specialized legal advice or opinions.  And, under that standard, the government's motion must be denied, *see* Dkt. 228, and Mr. Hansen's motion on legal opinions must be granted, *see* Dkt. 231.

The Court should also reject the government's request to pry into Mr. Hansen's privileged communications with his counsel.  This Court has already decided that issue, and it got it right.  The government offers no good reason to revisit that ruling now.

Finally, the government should not be permitted to wield Mr. Hansen's Sixth Amendment right to counsel as a cudgel.  The Constitution protects Mr. Hansen's right to consult with a criminal defense attorney, and courts have consistently rejected the notion that consulting with an attorney can be used as evidence of guilt.

In short, Mr. Hansen just asks for a fair trial on the merits.  Let fact witnesses offer facts; let the Court instruct on the law; let the jury apply that law to the facts; and let each side respect the rights and privileges of the other.  Mr. Hansen asks for nothing more; the Constitution and the Federal Rules require nothing less.  The government's motion should be denied.

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 12

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

Dated this 3rd day of May, 2021.

Respectfully submitted,

CALFO EAKES LLP

By: _____ s/ Angelo J. Calfo_____
      Angelo J. Calfo, WSBA #27079
      Patty Eakes, WSBA # 18888
      Anna F. Cavnar, WSBA #54413
      Henry C. Phillips, WSBA #55152
      1301 Second Avenue, Suite 2800
      Seattle, WA 98101
      Telephone: (206) 407-2200
      Fax:  (206) 407-2224
      angeloc@calfoeakes.com
      pattye@calfoeakes.com
      annac@calfoeakes.com
      henryp@calfoeakes.com

*Attorneys for Defendant Bernard Ross Hansen*

DEFENDANT ROSS HANSEN'S RESPONSE
TO GOVERNMENT'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DINO
VASQUEZ
(Case No. 18-cr-0092-RAJ) - 13

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224