THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

BERNARD ROSS HANSEN and DIANE RENEE ERDMANN,

Defendants.

No. CR18-092RAJ

**DEFENDANTS' MOTION FOR PUBLIC TRIAL PURSUANT TO DEFENDANTS' SIXTH AMENDMENT RIGHTS**

NOTE ON MOTION CALENDAR: June 11, 2021

*"In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial . . . ."*

*U.S. Const. amend. VI.*

## I. INTRODUCTION

The Sixth Amendment expressly guarantees defendants the right to a public trial. The fundamental requirement of a public trial, according to U.S. Supreme Court precedent, is that "members of the public and the press" have the opportunity "to attend the trial and to report what they have observed." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978). This "is for the benefit of the accused," the Supreme Court has explained, "that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984).

In this case, the Court has, over the objections of both defendants, set trial for July 6, 2021, and has declared that the courtroom will not be open to the public. Only an audio feed will be available for the public to follow the trial. That falls short of the Sixth Amendment's requirement of a public trial—that is, a trial in which "members of the public and the press" have the opportunity "to attend the trial and to report what they have observed." This Court should therefore either open the courtroom to members of the public or otherwise move this trial to a date on which Mr. Hansen and Ms. Erdmann can be given a public trial within the meaning of the Sixth Amendment.

## II. RELEVANT BACKGROUND

Hanging in the balance of the trial in this case are the remaining years of Ross Hansen's and Diane Erdmann's lives. The government has accused each of them of ten counts of mail fraud and ten counts of wire fraud. Each count carries a possible sentence of up to 20 years in prison.

This case has already attracted substantial public interest and press coverage. Multiple newspapers have reported on the case. *See, e.g.*, "$13M in Gold and Precious Metals has Allegedly Vanished from an Auburn Mint," Puget Sound Business Journal, May 26, 2017 (available at https://www.bizjournals.com/seattle/news/2017/05/26/13m-in-gold-and-precious-metals-has-allegedly.html); "Operators of South Sound Precious-Metals Firm Indicted in Alleged $25M Ponzi Scheme," Seattle Times, April 16, 2018 (available at https://www.seattletimes.com/business/operators-of-south-sound-precious-metals-firm-indicted-in-alleged-25m-ponzi-scheme/). And online media has also closely covered developments in this case. *See, e.g.*, http://about.ag/NWTMint.htm (covering case from before the indictment through the present).

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

On May 12, 2021, the Court held a status conference, during which the defendants orally requested a continuance of trial due to the ongoing impacts of the COVID-19 pandemic upon trial preparation and procedures. In particular, the defendants expressed concern that the COVID-19-related restrictions, including remote jury selection and facial coverings or masks impinged on the defendants' constitutional rights to a fair and public trial. The defendants expressed to the Court that they were willing to waive their rights to a speedy trial to ensure they receive a fair and public trial without COVID-19-related restrictions. The Court denied the defendants' motion and instructed parties that trial would go forward on July 6, 2021. As a part of that ruling, the Court informed the parties "[t]he public will not be permitted in the courtroom during trial, but will be provided audio access." Dkt. 253.

On May 20, 2021, Judge Jones' Courtroom Deputy emailed parties additional details regarding trial procedures, which stated "[t]here will be three cameras in the courtroom, which will stream the proceedings to those participants not in the courtroom. The stream will not be provided to the public, but only to counsel not in the courtroom, litigation support staff, etc. The public will not be permitted in the courtroom, but will be provided access to the audio of the proceedings." Declaration of Angelo J. Calfo, Ex. 1.

## III. ARGUMENT

The Sixth Amendment guarantees a criminal defendant a "public trial." U.S. Const. amend. VI. At a minimum, this requires "the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon*, 435 U.S. at 610. In other words, the "court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process." *United States v. Shryock*, 342 F.3d 948, 974 (9th Cir. 2003) (quoting *Estes v. Texas*, 381 U.S. 532, 588–89 (1965) (Harlan, J., concurring)).

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

This right, which exists "for the benefit of the accused," *Waller*, 467 U.S. at 46, protects the integrity of court proceedings in several ways. For one, "the presence of interested spectators may keep [defendants'] triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* Also, the ability of the public to observe the proceedings "is an effective restraint on possible abuse of judicial power" because it ensures "that every criminal trial is subject to contemporaneous review in the forum of public opinion." *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979). And, perhaps most importantly, the public trial right "encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46. These protections are so fundamental that the denial of a public trial is never "harmless error"—it is a "structural" error that automatically entitles the defendant to a new trial. *See Neder v. United States*, 527 U.S. 1, 8 (1999).

### A. The total closure of the courtroom is neither essential to an overriding interest nor narrowly tailored to serve that interest.

Given the importance of the Sixth Amendment's public-trial guarantee, the Supreme Court has held that any decision to close the courtroom to the public must be justified by a strict standard of scrutiny: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."[1] *Waller*, 467 U.S. at 45 (quoting *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984)). Under that standard, the "overriding interest" must be "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* Specifically, each of these four factors must be met: 1) the party seeking to close the hearing must advance an overriding

[1] The defendants believe that the Court's plan, as provided, constitutes a total closure of the courtroom to the public, as would any plan in which members of the public cannot physically be in the courtroom. *See, e.g.*, *Judd v. Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001) (distinguishing between a partial closure, where family members and limited press presence are permitted, and a total closure, where all spectators are excluded).

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

interest that is likely to be prejudiced, 2) the closure must be no broader than necessary to protect that interest, 3) the Court must consider reasonable alternatives to closing the proceeding, and 4) the Court must make findings adequate to support the closure. *Id.* at 48.

Those factors are not satisfied here. Not only has the Court not made any findings on the record to support a closure, but the Court has also failed consider the reasonable alternative of continuing the trial until a time when the defendants can be granted the public trial they are entitled to under the Sixth Amendment. The defendants have both indicated they are willing to sign speedy trial waivers until such a date that the Court deems it can grant them a public trial.

The closure here is also far broader than necessary to protect any overriding interest in closing the courtroom. For example, by providing only audio but not streaming video to the public, the Court is going beyond even the protocols set forth on the website for the district in which this Court sits, which specifically say that members of the "public who wish to view a criminal proceeding or trial will be directed to the Court's website to access video streaming of those proceedings." *See* https://www.wawd.uscourts.gov/node/614.

**B. Members of the public must have access to the courtroom to ensure the defendants receive the safeguards of the public trial guarantee.**

Even if the Court were to revise its protocols and allow video streaming but otherwise prevent spectators from physically accessing the courtroom, the Court would still need to make findings that cannot be made here. Any closure the courtroom—even a partial closure—requires the Court to "look to the particular circumstances to see if the defendant still received the safeguards of the public trial guarantee." *United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989).

Here, for the defendants to "receive[] the safeguards of the public trial guarantee," the Court would need, at a minimum, to allow members of the press and public to have physical access to the courtroom. That, after all, has long been the fundamental core of the right. *See*

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

*Nixon*, 435 U.S. at 610. And for good reason. One of the protections of the public trial right is to ensure that triers are "keenly alive . . . to the importance of their functions." *Waller*, 467 U.S. at 46. Jurors, for example, are more "keenly alive . . . to the importance of their functions" when they know that at any moment a spectator might look over to the jury box and catch them nodding off, staring into the distance, or doodling on their notepad. The physical presence of spectators likewise keeps counsel for both the government and the defense keenly aware of the possibility that a muttered remark or inappropriate gesture will be seen or heard, when a microphone or camera might otherwise miss it.

Similarly, the physical presence of the public also helps ensure that the "criminal trial is subject to contemporaneous review in the forum of public opinion." *Gannett*, 443 U.S. at 380. Spectators, for instance, may see or hear how witnesses comport themselves when the cameras are not rolling.

The physical presence of the public also "encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46. In the context of the Confrontation Clause, the Supreme Court has recognized the protective power of having to physically testify, face-to-face, in front of the accused, explaining that "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back.'" *Coy v. Iowa*, 487 U.S. 1012, 1019 (1988). The same goes for testifying before the public. It is far easier for witnesses to lie to a room of empty benches than to a public courtroom in which any members of the press, the defendants' friends and family, and other members of the community may come in, sit down, and watch.

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

## IV. CONCLUSION

The core of the Sixth Amendment right to a public trial is the guarantee that members of the public can observe courtroom proceedings. The Court's current protocols for the July trial deny the defendants that right, without the findings needed to meet the strict standard for closing a courtroom to the public. The defendants therefore respectfully request the Court either open the courtroom to members of the public or otherwise move this trial to a date on which Mr. Hansen and Ms. Erdmann can be given a public trial within the meaning of the Sixth Amendment.

DATED this 3rd day of June, 2021.

**CALFO EAKES LLP**

By: *s/Angelo J. Calfo*
Angelo J. Calfo, WSBA # 27079
Patty Eakes, WSBA # 18888
Anna F. Cavnar, WSBA # 54413
Henry C. Phillips, WSBA # 55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: (206) 407-2200
Fax: (206) 407-2224
angeloc@calfoeakes.com
pattye@calfoeakes.com
annac@calfoeakes.com
henryp@calfoeakes.com
*Attorneys for Defendant Bernard Ross Hansen*

**CORR CRONIN LLP**

Steven W. Fogg, WSBA # 23528
Benjamin C. Byers, WSBA # 52299
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600 Phone
(206) 625-0900 Fax
sfogg@corrcronin.com
bbyers@corrcronin.com

DEFENDANTS' MOTION FOR PUBLIC TRIAL – 7
No. CR18-092RAJ

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

**AOKI LAW PLLC**

Russell M. Aoki, WSBA # 15717
1200 Fifth Avenue, Suite 750
Seattle, Washington 98101
(206) 624-1900 Phone
(206) 442-4396
russ@aokilaw.com

*Attorneys for Defendant*
*Diane Renee Erdmann*

DEFENDANTS' MOTION FOR PUBLIC TRIAL – 8
No. CR18-092RAJ

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224