The Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD ROSS HANSEN and<br>DIANE RENEE ERDMANN,<br><br>Defendants. | NO. CR18-092RAJ<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR PUBLIC TRIAL PURSUANT TO DEFENDANTS' SIXTH AMENDMENT RIGHTS (Dkt. #260)**<br><br>**Oral Argument Requested** |

## I. INTRODUCTION

Defendants have jointly moved for a public trial, arguing that the Court's plan to provide the public access to the trial with an audio feed falls short of the Sixth Amendment's requirements. Defendants argue that the Court should either completely open the courtroom or postpone the trial.

In light of the changing conditions of the pandemic, and consistent with Ninth Circuit law, the government respectfully recommends that the Court hold a hearing in advance of trial to consider how best to protect the right to a public trial. The government disagrees with the suggestion that nothing short of a fully open courtroom can satisfy the public trial right, even during the ongoing COVID-19 pandemic. Rather, the government believes that, consistent with other courts across the country, this Court can properly

Government's Response to Defendants' Motion for Public Trial - 1
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

allow public access to the trial, through the audio feed, and perhaps other measures deemed appropriate by the Court, e.g., allowing some spectators in the courtroom, and/or allowing a video feed to another courtroom. Delaying the trial is not necessary; both Defendants' right to a public trial and the health of the participants in the trial can be adequately protected.

## II. BACKGROUND

### A. The right to a public trial

The Sixth Amendment of the Constitution states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. Amend. VI. In *Waller* v. *Georgia*, 467 U.S. 39 (1984), the Supreme Court explained that this requirement "is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions...." *Id*. at 46 (internal citations and quotation marks omitted).

In *Waller*, the Court concluded that a trial judge's total closure of a seven-day pre-trial suppression hearing violated the defendant's Sixth Amendment public trial right. *Waller* held that "under the Sixth Amendment, any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press–Enterprise* and its predecessors" concerning the First Amendment right of access to courts—that is, "the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id*. at 47–48

The *Waller* Court identified four separate factors relevant to whether the total closure of a court proceeding is justified. First, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced." *Waller*, 467 U.S. at 48. Second, "the closure must be no broader than necessary to protect that interest." 467 U.S. at 48. Third, "the trial court must consider reasonable alternatives to closing the proceeding." 467 U.S. at 48. "[T]rial courts are required to consider alternatives to closure even when they are not offered by the parties." *Presley* v. *Georgia*, 558 U.S. 209,

Government's Response to Defendants' Motion for Public Trial - 2
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

214 (2010). Finally, the trial court "must make findings adequate to support the closure." *Waller*, 467 U.S. at 48. The court must identify "the particular interest, and threat to that interest ... along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Presley*, 558 U.S. at 215 (internal quotation marks omitted). Conclusory statements do not suffice. *Id*. at 216; *see also United States* v. *Waters*, 627 F.3d 345, 361 (9th Cir. 2010) (deeming insufficient a district court's statement that the hearing would be closed "'because that's the type of hearing it is'"). A district court considering a closure should give the defendant the opportunity to contest the closure motion at a hearing. *United States* v. *Sherlock*, 962 F.2d 1349, 1358 (9th Cir. 1989).

As noted, *Waller* concerned the total closure of a seven-day suppression hearing. The Ninth Circuit has distinguished the type of "total closure" at issue in *Waller* from partial closure, observing that *Waller* "does not necessarily govern partial closures." *Id.* at 1356–57. Where the closure is only partial, the Ninth Circuit has held that the court should determine whether there are "substantial reasons" for the closure and whether "the closure was narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered." *Id*. at 1357; *see also Waller*, 467 U.S. at 48 (suggesting that a closure that had been more narrowly tailored to the interest at stake might pass constitutional muster); *United States* v. *Yazzie*, 743 F.3d 1278, 1288 n. 4 (9th Cir. 2014) ("Partial closure of a courtroom has a reduced impact on a defendant's rights"); *United States* v. *Rivera*, 682 F.3d 1223, 1236 (9th Cir. 2012).

For a partial closure to be justified under the Ninth Circuit's decisions, there are three procedural requirements that must be satisfied: "(1) the court must hold a hearing on the closure motion; (2) the court must make factual findings to support the closure; and (3) the court must consider reasonable alternatives to closing the courtroom." *United States* v. *Rivera*, 682 F.3d 1223, 1236 (9th Cir. 2012).

//

//

Government's Response to Defendants' Motion for Public Trial - 3
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B. Safety measures related to the COVID-19 pandemic.**

In March 2020, acting under Sections 15002(b)(1) and 15002(b)(2)(A) of the Coronavirus, Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, the Judicial Conference of the United States found that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. § 1601 et seq.) with respect to COVID–19 will materially affect the Federal courts generally. Section 15002 of the CARES Act provides that the chief judge of a district court covered by that finding may authorize the use of video conferencing for certain criminal proceedings. Since shortly after the Judicial Conference of the United States made that finding, this Court has been operating under a general order entered by the Chief Judge authorizing video conferencing for certain criminal procedures. The court has reviewed and updated those orders as conditions have changed. But the CARES Act does not provide for, and Rule 53 of the Federal Rules of Criminal Procedure does not permit, the streaming of criminal jury trials. See Pub. L. 116-136, § 15002(b)(1)(A) - (J) (list of events that may be eligible for video conferencing does not include criminal trials); Fed. R. Crim. P. 53 (providing that "the court must not permit ... the broadcasting of judicial proceedings from the courtroom").

In March 2021, the Chief Judge entered a new general order, 04-21, finding that:

> In the last two months, the daily number of positive cases, hospitalizations, and deaths have significantly decreased in the Western District of Washington. A significant percentage of the public in this district has been vaccinated against the novel coronavirus. The vaccine has been available to those most vulnerable to serious complications from the virus and is now available to the Court's staff. The distribution of vaccines to other members of the general public is anticipated to proceed in phases through the next two months. At this time, it appears likely that the majority of individuals with business in the Courthouses will have access to the vaccine by June. Until the majority of the public has received the vaccine and been fully vaccinated, limiting the size and frequency of gatherings remain critical to preventing serious injury and death from COVID-19.

Government's Response to Defendants' Motion for Public Trial - 4
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The Centers for Disease Control (CDC) and other health organizations have
2 consistently recognized that masking and social distancing can help limit the spread of
3 COVID-19.  In light of the General Order, the current COVID-19 conditions, and health
4 guidelines, this Court indicated that it intends to limit the number of people in the
5 courtroom during the trial in order to reduce the risk of contracting COVID-19 for all of
6 the participants, including the jury and Defendants. *See, e.g.*, Dkt. #261-1. Indeed, the
7 defense has indicated in other pleadings that Defendants both have health issues (Dkt.
8 #202 at 2; Dkt. #190 at 2) and has seemed to acknowledge in other pleadings that health
9 risks can be reduced by limiting the number of people in the courtroom.  *See* Dkt. #202 at
10 2.

**III.   ARGUMENT**

12    There is no serious question that the COVID-19 pandemic provides a "overriding"
13 and a "substantial" reason for limiting spectators in the courtroom during Defendants'
14 trial. Protecting public health and safety is the sort of interest courts have recognized can
15 justify a courtroom closure. *Sherlock*, 962 F.2d at 1356 (collecting cases).  The measures
16 taken across the country and in this district to protect people from disease for the past 15
17 months demonstrate the seriousness of the pandemic and need for substantial caution in
18 allowing groups of people to gather in closed spaces for extended periods.  "Protecting
19 the public from unnecessarily spreading a potentially fatal virus is not only a purpose the
20 government may pursue; it is one it has an obligation to." *United States* v. *Babichenko*,
21 2020 WL 7502456, *3 (D. Idaho Dec. 21, 2020) (quoting Stephen E. Smith, "*The Right*
22 *to a Public Trial in the Time of COVID-19,*" 77 Wash & Lee L. Rev. Online 1, 6 (2020)).

23    Additionally, it is not clear that the limitations here are a "total closure" as
24 suggested by the defense. Motion at 4 n. 1. Conducting a trial with a live audio feed does
25 not completely bar the public from the trial. It provides the public with sufficient
26 simultaneous access to the trial proceedings to help ensure that the defendants are "fairly
27 dealt with and not unjustly condemned" and that their triers will remain aware of their
28 function and responsibility, as contemplated by *Waller*. Because it gives the public access

Government's Response to Defendants' Motion for Public Trial - 5
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to proceedings as they are happening, it is more akin to a traditional partial closure (where some spectators are removed) than a total closure (where all spectators are removed).

The government also disagrees with Defendants' suggestion that a delay in the trial is needed to protect their rights to a public trial. They claim, for example (motion at 5), that even if the court were to "revise its protocols and allow video streaming but otherwise prevent spectators" from being present in the courtroom, the Court would need to make findings that cannot be made here, because nothing short of allowing the press and the public to have physical access to the courtroom will suffice. That argument ignores both the pandemic and the fact that "space limitations" are a "reality in every courtroom." *Bunn v. Lopez*, 740 Fed App'x 145, 146 (9th Cir. 2018) (unpublished).

The Ninth Circuit's analysis is *Bunn* makes clear that practical realities associated with a particular trial can result in the exclusion of some spectators without any closure resulting. In that case, even though the space limitations were "exacerbated in this case by the joint trial and the court-ordered 'buffer zones'" and even though "not all of Bunn's supporters could attend all of the trial" as a result, the Court concluded that the Bunn's trial was not a closed proceeding. *Id*. at 146. Nothing in *Waller* suggests that a court must provide any particular number of public seats, and the pandemic is at least an equally serious reason for limiting spectators as buffer zones between parties.

Given the Defendants' motion and in light of the Ninth Circuit's conclusions regarding the need for specific consideration of the reasons for a closure and for findings thereon, the government requests that the Court hold a hearing on this matter. Specifically, the Court should consider whether its protocols are "narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered." *Sherlock*, 962 F.2d at 1357. Defendants have a right to be heard on this issue, although an evidentiary hearing is not required. *Id.* at 1358-59. The Court could hold such a hearing at the pretrial conference scheduled for June 25, or at another time.

Government's Response to Defendants' Motion for Public Trial - 6
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The government notes that it may be the case that conditions in early July will have changed such that some spectators may be allowed at trial. Also, even if the Court finds at that point that no spectators may be accommodated in light of the need to provide physical space between the jurors and the size of the trial teams, it may be possible to explore possibilities in addition to an audio feed, such as providing video to a nearby courtroom open to the public (the Court contemplates providing a video feed to trial team, *see* Dkt. #261-1). The Court may make findings allowing some, or all of these accommodations, as contemplated in the order in *United States* v *Huling*, 2021 WL 2291836 (D. R.I. June 4, 2021) (attached as Exhibit 1).

### IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court hold a hearing related to the Defendants' public trial motion and enter findings consistent with the law and the need to protect public safety.

Dated this 10th day of June 2021.

    Respectfully submitted,

    TESSA M. GORMAN
    Acting United States Attorney

    *s/ Brian Werner*
    BRIAN WERNER
    BENJAMIN DIGGS
    Assistant United States Attorneys
    700 Stewart Street, Suite 5220
    Seattle, Washington 98101
    (206) 553-7970

Government's Response to Defendants' Motion for Public Trial - 7
*U.S. v. Bernard Ross Hansen, et al.* / CR18-092RAJ

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970