THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD ROSS HANSEN,<br><br>　　　　Defendant. | No. CR18-092RAJ<br><br>ORDER ON GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE RELATED TO NORTHWEST BANKRUPTCY |

THIS MATTER comes before the Court upon the government's Motion *in Limine* to Exclude Certain Evidence Related to Northwest Territorial Mint Bankruptcy (Dkt. # 227), defendant Erdmann's response (Dkt. # 243), defendant Hansen's response (Dkt. # 247), and the files and pleadings herein. The Court **GRANTS in part** and **DENIES in part** the government's motion. Unless stated otherwise, the Court's ruling applies equally to the defendants, and each party is expected to advise their clients and witnesses of the Court's ruling.

Through this motion, the government seeks to exclude a court order and related testimony in a related bankruptcy proceeding. On April 1, 2016, the Northwest Territorial Mint (NWTM) petitioned for Chapter 11 bankruptcy. *In re Nw. Territorial Mint, LLC*, No. 16-11767 (Bankr. W.D. Wash. Apr. 1, 2016) (Dkt. # 1). Over two years

ORDER – 1

ago, several professionals providing administrative services to NWTM's estate applied to the bankruptcy court for fees. *Id.* (Dkt. # 2118); *see also* Dkt. # 227-1. In ruling on their fee applications, the bankruptcy court entered an 85-page order ("Bankruptcy Fee Order"). Dkt. # 227-1.

The order makes several findings of fact. *Id.* 3-31. Significant here, the order makes several findings about the actions and representations of bankruptcy trustee Mark T. Calvert. Citing several examples, the bankruptcy court determined that "the Trustee failed to meet some of his most basic responsibilities, including the duty of candor to the [c]ourt." *Id.* at 26. Among the examples were several factual misrepresentations about the "viability" and "administrative[] solven[cy]"[1] of the estate. *Id.* at 5-31. Throughout its findings, the bankruptcy court explained that the trustee made "disingenuous" and "inconsistent" statements," filed "inaccurate reports," made "several missteps," engaged in litigation "that yield[ed] no results for creditors," and more. *Id.*

The government now seeks to exclude the Bankruptcy Fee Order entirely. Dkt. # 227. More than that, it seeks to exclude the following: cross-examination of government witnesses about the trustee's conduct, cross-examination of government witnesses about the bankruptcy court's adverse findings against the trustee, evidence of the trustee's statements to the bankruptcy court, and evidence related to the sale of an NWTM location in Texas and the return of custom dies to customers. *Id.* Broadly, the government contends that all the above are irrelevant or unduly prejudicial. It acknowledges, however, that "some aspects of the bankruptcy are relevant and may be properly admitted at trial." *Id.* at 7. Specifically, the government says that "evidence related to the post-bankruptcy inventory of customer-stored precious metals and the financial condition of the company at the time of bankruptcy" should be permitted. *Id.*

Defendants disagree. Both defendants argue that certain events in the bankruptcy proceeding are plainly relevant to their defenses here. Defendant Erdmann intends to

---

[1] "Administrative solvency" refers to the estates ability to pay professional fees.

ORDER – 2

argue that the trustee "is both an alternative source of loss to NWTM's customers, and a source of information which calls into question the reliability of the Government's investigation." Dkt. # 243 at 1.  Likewise, Defendant Hansen intends to question the "bias and self-interest, credibility, and [] reliability" of the government's investigation, which Mr. Hansen asserts relied on the trustee.  Dkt. # 247 at 7.

In its previous order, the Court explained that some aspects of the bankruptcy proceeding are indeed relevant: "Evidence of the bankruptcy will most certainly be presented during the cases presented by the government and the defendant. Evidence of the bankruptcy, its timing, how it was paid for, efforts of the defendants to retain control of the company, and what conversations occurred before and during its initiation are relevant." Dkt. # 258 at 3.  Consistent with that order, the Court analyzes the government's individual requests in turn.

1. <u>Bankruptcy Fee Order</u>

The government seeks to exclude the 85-page order entered by The Honorable Christopher M. Alston in its entirety. Dkt. # 227-1.  The government advances several arguments.  According to the government, the order is irrelevant under FRE 401 and FRE 402, unduly prejudicial under FRE 403, and hearsay without an exception under FRE 801. Dkt. # 227 at 7-9.  In response, Defendants argue that the order is relevant to their defenses, the potential for jury confusion is slight, and the order is a public record.

Though relevant, the Court finds that the Bankruptcy Fee Order is unduly prejudicial and hearsay without an exception.  For those reasons, the order—including any portion of the order or reference to the order or its existence—must be excluded.

To start, the Court echoes its previous ruling.  Many aspects of the bankruptcy proceeding are relevant.  The government does not dispute that.  Instead, with great precision, it has carved out a portion of the bankruptcy that it deems relevant and asks the Court to exclude all else.  According to the government, the "inventory of the customer stored metal conducted after bankruptcy is relevant and admissible," and so too is the

ORDER – 3

"financial condition of NWTM *at the time* it filed for bankruptcy" because it "demonstrate[s] the ability of Defendants' company to fulfill their promises to customers." Dkt. # 227 at 7-9 (emphasis added).

Defendants argue that relevancy should not be construed so narrowly. For example, defendant Hansen argues that the inventory and financial condition evidence that the government seeks to introduce was in fact "built upon [the trustee's] representations and analysis." Dkt. # 247 at 4-6. The misrepresentations of the trustee in the bankruptcy proceeding, defendant Hansen contends, is thus directly relevant to his defense that the government's investigation was unreliable.

The Court agrees with defendants. Much of the evidence (at least the evidence raised by defendants here) about the trustee's conduct in the bankruptcy proceeding is indeed relevant. Further, the Court rejects the government's narrow view that evidence of NWTM's financial condition is relevant only insofar as it reflects the condition of the company at the time bankruptcy was filed. Evidence of NWTM's later financial condition is also relevant. Both types of evidence (the trustees conduct and NWTM's financial condition) have probative value in evaluating the government's case-in-chief and defendants' defenses. Several portions of the Bankruptcy Fee Order address such evidence and are thus relevant under FRE 401.

Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed" by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Relevant as the Bankruptcy Fee Order may be, the Court finds that its admission would be unduly prejudicial.

The Court's conclusion is compelled by *United States v. Sine*, 493 F.3d 1021, 1024 (9th Cir. 2007). There, the Ninth Circuit explained that admission of a judge's findings in a separate action may create "too great of a danger of unfair prejudice" and may thus violate FRE 403. *Id.* at 1033.

ORDER – 4

In *Sine*, a lawyer aided a pyramid scheme by assuring lenders that their investments were secured by collateral when in fact the collateral was worthless. *Id.* at 1023. Before he was indicted for fraud, to craft a "good faith" defense, the lawyer filed several lawsuits purporting to seek the value of the collateral. *Id.* An Ohio federal judge rejected his claims, held him in contempt, and reprimanded him in a scathing order—calling the lawyer's attempts "rife with chicanery, mendacity, deceit, and pretense." *Id.* at 1027. Later, during the lawyer's criminal case, the parties introduced the Ohio judge's findings (and much of its "sordid details") through direct and cross examination. *Id.* at 1027-30.

The Ninth Circuit held that mere testimony of a judge's order, let alone the order itself, could be unduly prejudicial. *Id.* at 1033-34. "[F]actual testimony from a judge" can unduly affect a jury as the jury is "likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves." *Id.* Because the "nature of the facts found and comments made" in the Ohio judge's order "directly opin[ed] on [the lawyer]'s motivations and truthfulness, thereby implicating [the lawyer]'s overall credibility as a witness," admission of the order violated FRE 403. *Id.* To be sure, the Ninth Circuit held that the *facts underlying the order* were relevant and likely admissible, but the order itself was not. *Id.* The party relying on the order would simply have to introduce those facts "through less prejudicial means" than relying on the findings in the order directly. *Id.* at 1033-35.

The Ninth Circuit's reasoning in *Sine* squarely applies to the Bankruptcy Fee Order. The bankruptcy judge's factual findings of the trustee's misdeeds and misrepresentations are unduly prejudicial and would confuse the jury. Austere as they were, the bankruptcy judge's criticisms took place in a specific procedural context. Apprehending that context is no easy task. The Bankruptcy Fee Order was entered in the NWTM bankruptcy (a separate, non-criminal proceeding), and the judge who entered the

ORDER – 5

order was addressing the issue of professional fees in a bankruptcy case and was applying bankruptcy law.  That context may be lost on a jury.  In this action, the jury might instead outsource their credibility determinations about the trustee to the bankruptcy judge, "an authoritative, professional factfinder."  *Sine*, 493 F.3d at 1033.  Whatever probative value the Bankruptcy Fee Order may have, the Court finds the danger of jury confusion to be greater.  Thus, the Court excludes the order, any portion of the order, and any references to the order or its existenceunder FRE 403.

Undue prejudice aside, the Bankruptcy Fee Order is also hearsay without an exception.  "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"  *Sine*, 493 F.3d at 1036 (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).  So too are "judicial findings of fact" underlying the judgment, especially "when dealing with [judicial] statements that recapitulate in detail others' testimony and declarations."  *Id.*  Judicial findings of fact are inadmissible hearsay unless a specific hearsay exception exists.  *Id.*

Here, neither party may rely on the Bankruptcy Fee Order's findings of fact to prove the truth of the matter asserted as that party would be relying on hearsay.  The Court finds no hearsay exception applicable.  Defendants argue that the public record hearsay exception applies.  Dkt. # 247 at 10.  The Court disagrees.  The exception does not apply to judicial factfinding.  *Sine*, 493 F.3d at 1037 n.16.  Of course, in theory, the *facts* underlying the Bankruptcy Fee Order would not be hearsay.

In sum, the Court rules that the Bankruptcy Fee Order is inadmissible, excludes the order, and to that extent **GRANTS** the government's motion.  For clarity, the Court admonishes the parties yet again: the Bankruptcy Fee Order, portions of the order, and references to the order or its existence are inadmissible.  At trial, the Court will scrupulously patrol this boundary.

   2.   Cross Examination of Government Witnesses About Trustee's Conduct or Adverse Findings Against Trustee

The government argues that cross-examination of its witnesses about the

ORDER – 6

bankruptcy trustee's conduct would be unduly prejudicial. Dkt. # 227 at 9-10. The government says that the trustee was not part of its investigation and that the former Cascade Capital Group (CCG) employees it intends to call should not be able to testify about the trustee's conduct. *Id.* The employees, the government argues, should only be permitted to testify about their own investigations. *Id.*

The Court rejects the government's request as to the trustee's *conduct*. As explained above, the trustee's conduct is relevant. Should the government call a witness and should that witness have personal knowledge of the trustee's conduct or should that witness have conducted an investigation influenced by the trustee, that witness's testimony would be relevant. The Court sees no reason to preclude cross examination on such topics. At this stage, the government has given the Court no reason to believe its representation that "the Trustee and the CCG employees were not part of the government's investigation." Dkt. # 227 at 9. On the other hand, defendant Hansen has given the Court ample reason to believe that in fact the trustee "zealously participated in the government's investigation against him." Dkt. # 247 at 4-5. Currently, the government has given the Court no justified basis to conclude that its witnesses—and its witnesses' own investigations—were unaffected by the trustee's conduct.

In support of its argument, the government relies on *United States v. Yagman*, 2007 WL 9724391, *6 (C.D. Cal. May 16, 2007). According to the government, *Yagman* stands for the proposition that "a defendant may not question a government witness about aspects of the investigation 'unrelated to the evidence produced by the *witness's* investigation.'" Dkt. # 227 at 9 (emphasis in original) (quoting *Yagman*, 2007 WL 9724391 at *6). But the government quotes the decision out of context. The *Yagman* court was principally concerned with excluding evidence of vindictive prosecution under Rule 12(b)(3) of the Federal Rules of Criminal Procedure. *Id.* at *2. Under Rule 12(b)(3), the *Yagman* court explained, "numerous courts have held that argument or evidence concerning vindictive, selective, or unfair prosecution must be excluded at

ORDER – 7

trial." *Id.* Thus, the *Yagman* court excluded some investigation evidence because it worried that if it did not, and if it instead gave defendant "carte blanche to attack all aspects of the investigation," the defendant might "violate the clear prohibition against arguing or introducing evidence of vindictive prosecution at trial." *Id.* at *6. The *Yagman* court excluded the investigation evidence because the specter of vindictive prosecution evidence loomed.

Read in context, *Yagman* is not instructive. No party here raises the issue of vindictive prosecution. And the *Yagman* court simply did not address the issue raised by this motion: whether one witness may opine on the investigation conducted by another witness. The defense "intends to question government agents who cooperated with [trustee], as well as NWTM and CCG employees, about their knowledge of and/or participation in [trustee]'s wrongdoing, and his potential influence on their work." Dkt. # 247 at 11. Nothing in *Yagman*, a decision about the admissibility of vindictive prosecution evidence, suggests that defendants should be precluded from examining the government's witnesses in this way. Hence, the Court rejects the government's request as to the trustee's conduct.

That said, the Court grants the government's request as to the bankruptcy court's *findings* against the trustee. As explained above, the bankruptcy court's findings are contained in the Bankruptcy Fee Order. Those findings are relevant yet unduly prejudicial and hearsay without an exception, and they are thus inadmissible. So too is cross examination about those findings.

In sum, the Court will not prohibit cross examination about the trustee's conduct but will prohibit cross examination about the bankruptcy court's findings. To that extent, the government's motion is **GRANTED in part** and **DENIED in part**.

3. <u>Evidence Related to Trustee's Statements About Whether the NWTM Estate Was Administratively Solvent and About Financial Viability of NWTM</u>

Next, the government seeks to exclude evidence about certain representations that

ORDER – 8

the trustee made during the bankruptcy proceeding. Dkt. # 227 at 10-11. Specifically, the government asks the Court to exclude the trustee's representations that NWTM was "administratively solvent" and that certain NWTM business segments were financially viable. *Id.* Such statements, the government says, are irrelevant and would confuse the jury. *Id.*

The Court disagrees. As explained above, the trustee's conduct, including his representations to the bankruptcy court, are indeed relevant. The Court agrees with defendants that the trustee's "changing assessments of the company's financial status before or after bankruptcy, as well as his shifting opinions regarding the potential amount of return to creditors" are relevant to their defenses. Dkt. # 247 at 11. Such evidence goes to the "reliability of the Trustee's representations about the financial condition of the company when Hansen left—an area that the government concedes is relevant." *Id.* at 12. The Court finds that the danger of undue prejudice is low and is outweighed by such evidence's probative value. To that extent, the government's motion is **DENIED**.

The Court expresses no opinion whether the trustee's statements themselves would be hearsay and, if so, whether any exception would apply. The government's request challenges this evidence's relevancy, and the parties have not raised any hearsay issue here.

4. <u>Evidence Related to Sale of Texas Location and Return of Custom Dies</u>

Finally, the government seeks to exclude yet more of the bankruptcy court's adverse findings. Dkt. # 227 at 11-12. Specifically, it seeks to exclude the court's findings that the trustee misled the court about the sale of an NWTM Texas location and the ownership of custom dies. *Id.* Again, the bankruptcy court's findings are inadmissible. As to the underlying facts regarding the sale of the Texas location and the custom dies, the Court will not rule in a vacuum without more information about how this evidence relates, if at all, to NWTM's financial condition. To that extent, the government's motion is **TAKEN UNDER ADVISEMENT**. The government may raise

ORDER – 9

proper objections to the testimony at trial.

For all the foregoing reasons, the government's motion is **GRANTED in part** and **DENIED in part.**

DATED this 15th day of June, 2021.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 10