HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>BERNARD ROSS HANSEN, and<br>DIANE RENEE ERDMANN,<br><br>Defendants. | Case No. CR18-0092-RAJ<br><br>DEFENDANTS' TRIAL BRIEF |

## I. INTRODUCTION

Defendants Bernard Ross Hansen and Diane Erdmann jointly submit this trial brief for the Court's consideration during the trial scheduled to begin July 6, 2021.

## II. BACKGROUND

The defendants are charged with fraud for going out of business. Mr. Hansen and Ms. Erdmann, who are in a long term committed relationship and live together, are each charged with ten counts of mail fraud and ten counts of wire fraud in connection with the operation of Northwest Territorial Mint (NWTM), the minting company which Mr. Hansen owned and at which both defendants worked. NWTM sold bullion to retail customers, ran bullion storage and lease programs,



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

and also created custom medals, coins, and other memorabilia for government and private customers.

NWTM filed for Chapter 11 bankruptcy on April 1, 2016, and subsequently ceased its bullion operations under the direction of the bankruptcy trustee, Mark Calvert. The decision to file for bankruptcy was precipitated by a large judgment stemming from otherwise unrelated civil litigation in early 2016. Under Mr. Calvert's direction, thousands of NWTM customers lost funds sent for orders which had not been fulfilled at the time of bankruptcy or failed to recover stored metal after Mr. Calvert's firm, Cascade Capital Group, took control of the assets of the company. But these losses were sustained after the defendants left.

## III. LEGAL ISSUES

### A. Lack of Fraudulent Intent

For the jury to convict Mr. Hansen or Ms. Erdmann, the government must prove four elements for both mail and wire fraud:

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme; or the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme. *See* Model Crim. Jury Instr. 9th Cir. 8.124 (2021).



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

The allegations in the Indictment pertain to four different types of customers, to whom different alleged misrepresentations were purportedly made over the span of seven years, between 2009 and 2016. Dkt. 1 (Indictment) ¶ 13. Specifically, Counts 6–8, 10, 12–14, 16, and 18–20 involve standard bullion customers, *see id.* ¶¶ 16–28; Counts 1–5, 11, and 15 involve storage customers, *id.* ¶¶ 29–36 ; Count 9 involves a lease customer, *id.* ¶¶ 40–45, and Count 17 involves the Pan American Silver Company, with whom the Mint had an ongoing consignment relationship, *id.* ¶¶ 37–39. The government's evidence will fail to sustain a conviction on any of these counts because it will fail to prove that either Mr. Hansen or Ms. Erdmann acted with fraudulent intent, that is, the intent to deceive and cheat NWTM's customers. At most, the evidence may show NWTM used accounting and product tracking practices that were inadequate in light of the company's rapid growth. The defendants lived modest lives and devoted almost every waking hour to their work. But poor business practices are not fraud, and bankruptcy is not a crime.

The government's exhibits suggest it will argue NWTM's customers were deceived because funds from each particular customer's purchase were used for business expenses instead of being immediately used to purchase material to fulfill that specific customer's order. But courts have recognized that if a defendant incurs an obligation—such as a promise to deliver a customer's bullion within a certain time, with the option of a refund or buyback in the event that did not occur—with a reasonable expectation he or she will be able to make good on that promise, there is no fraudulent intent. *See, e.g., United States v. Unruh*, 855 F.2d 1363, 1373 (9th Cir. 1987) (defendant who wrote a check with the reasonable expectation there would be funds available by the time it cleared lacked fraudulent intent). Moreover, to be guilty of mail or wire fraud, a defendant "must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions. In other words, a defendant must intend to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). The government will not be able to establish this here.



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

Mr. Hansen and Ms. Erdmann will ask for an acquittal on all counts based on the lack of evidence of intent.

**B. Bankruptcy Evidence**

The Court has largely denied the government's request to exclude evidence relating to the conduct of the bankruptcy trustee Mark Calvert. In its order dated June 15, 2021, the Court ruled it will permit cross examination on this issue. Dkt. No. 227 at 8–9. The defendants will cross examine the government's witnesses in accordance with the Court's order.

Beyond cross examination, the defense also intends to introduce evidence of Mr. Calvert's conduct in its case in chief. Though the government has removed Mr. Calvert from its witness list, the defendants have not. If called as a defense witness, the defense will ask for permission to treat Mr. Calvert as an adverse witness. *See* Fed. R. Evid. 611(c)(2) (allowing leading questions "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party"); *see also Chambers v. Mississippi*, 410 U.S. 284, 297–98 (1973) ("The availability of the right to confront and to cross-examine those who give damaging testimony against the accused has never been held to depend on whether the witness was initially put on the stand by the accused or by the State. We reject the notion that a right of such substance in the criminal process may be governed by that technicality or by any narrow and unrealistic definition of the word 'against.'").

**C. Exclusion of Legal Opinions**

In response to a defense motion in limine, the government represented that it would not offer expert testimony from any of the three former NWTM lawyers on its witness list and would not offer any opinions about the legality of the defendants' conduct. *See* Dkt. 255 at 2:9–12. The Court should hold the government to its word and not allow it to offer through its witnesses any opinion testimony about whether the defendants' conduct was, in fact, illegal. The Court should also preclude the government from even suggesting that the jury should consider any legal opinions contained in any government exhibits as evidence that Mr. Hansen's conduct was illegal.



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

The defense expects, however, that when NWTM's former lawyers are called at trial, the line between opinion evidence and lay evidence will prove illusory, and it will become apparent that the government is indeed "ask[ing] the jury to believe the testimony as 'opinion' testimony." *See* Dkt. 255 at 19–22. Indeed, the evidence has no probative value otherwise: If the lawyers were wrong in their opinions that Mr. Hansen was violating the law, then the evidence would show only that Mr. Hansen received bad advice from them—the evidence would say nothing about Mr. Hansen's intent to commit fraud. For the evidence to have any probative value at all, the opinion evidence must be believed—the jury must believe that the lawyers were correct in their opinions that Mr. Hansen was violating the law. For that reason, the defense continues to maintain its objections to the admissibility of NWTM legal memoranda and any legal opinion testimony from former NWTM lawyers, and the defense respectfully asks the Court to revisit its ruling as the evidence develops during trial.

Revisiting this issue during trial and excluding the government from offering legal opinions from NWTM's former lawyers would not be inconsistent with *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), which is the case the government and the Court have relied upon in analyzing the admissibility of the government's legal-opinion evidence. This is because *Graf* is distinguishable in three important ways. First, the defense respectfully notes that the court in *Graf* reviewed the admissibility of the legal-opinion evidence for plain error only, because the defendant failed to raise an objection to it at trial. *Id.* at 1164–65. Second, the defendant in *Graf* also did not challenge the admissibility of the evidence in that case under Rule 403, as the defense does here, so the *Graf* opinion does not address how Rule 403 would apply to legal opinion evidence like that offered in this case. *Id.* Third, the evidence in *Graf* was also far more probative than the evidence offered here: there, the defendant was accused of intentionally marketing insurance plans that did not comply with ERISA, and the government had to prove that he was advised that the plans did not comply



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

with ERISA. *See id.* Not so here, where the government need only prove defendants had the intent to defraud—not an intent to violate the law.

**D. The Scope of Evidence at Trial**

In its rulings on the parties' motions in limine, the Court has already placed boundaries on what evidence will be admitted. The government has also made representations as to evidence it will not offer. The defendants will rely on those representations. The defense understands that the following categories of evidence will *not* be offered or admitted at trial:

- NWTM's 1989 Bankruptcy, Dkt. No. 213;
- The "Nevada Defamation Lawsuit," except to the extent Mr. Hansen testifies, *id.*;
- The six boxes mailed to the archive room in Dayton, Nevada, *id.*;
- Mr. Hansen's criminal history, *id.*;
- Conclusions made by the Washington Attorney General's Office ("AGO") in the investigation of NWTM, *id.*;
- Testimony regarding the purpose of cash payment(s) made from the vault to NWTM employee(s), *id.*;
- Statements made by Mr. Hansen regarding his criminal history, prison time, or conduct in prison, *id.*;
- Aspects of certain statements made by co-defendants which facially implicate one another, *id.*, Dkt. No. 254;
- Aspects of the "September 28, 2015 Greg Fullington Memorandum," Dkt. No. 255;
- The complaint in the AGO's consumer protection action against NWTM, Dkt. No. 258;
- References to charges on Ms. Erdmann's American Express credit card as "fraudulent," *id.*;
- Any evidence of parties' motions in limine, *id.*; and
- The "Bankruptcy Fee Order," Dkt. No. 268.

//

//



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

**E. The Defendants' Right to a Public Trial**

The defendants understand the Court will hear argument on their motion for a public trial at the pretrial conference set for June 25, 2021, and here reiterate the vital importance of the safeguards offered only by an in-person, face-to-face trial—instead of one that is partially remote, or face-to-mask. While Defendants understand that the modified trial practices that the Courtroom Deputy described to the parties via email on May 20, 2021 may change by July 6, 2021, Defendants further raise the following concerns with the described masking requirements, which provided "[a]ll participants, including counsel, the defendants, jurors[,] and witnesses shall wear masks, but will be permitted to lower their masks when speaking. No face shields will be necessary."

First, by requiring Mr. Hansen and Ms. Erdmann to remain masked at all times unless testifying, defendants are left with a choice between two evils—either remain hidden behind a mask, faceless to the jury, or waive their Fifth Amendment rights and take the stand in order to allow the jury the opportunity to fully see them as human. Indeed, empathy is another aspect of trial which may be impaired if the defendants, witnesses, or jurors are separated by masks: as nationally renowned jury and trial consultant Denise LaRue has stated in an affidavit assessing modification of trial procedures under COVID-19 pandemic conditions, "jurors' abilities to observe a masked criminal defendant would be impaired in ways that would likely to result in bias against the accused." As Ms. LaRue notes, "in virtually every case, a goal of a criminal defense attorney is to humanize the defendant. A masked defendant is practically faceless. A face shield alters one's appearance significantly, making one appear alien or at best unnatural." *See* Declaration of Angelo J. Calfo ("Calfo Decl.") Exhibit A (February 28, 2021, Affidavit of Denise deLaRue), ¶ 7. Putting Mr. Hansen and Ms. Erdmann in this position is both inequitable and prejudicial.

Second, witnesses should not have to wear masks at all while testifying or sitting in the box, and lawyers should not have to wear masks while examining witnesses: it is distracting and interferes with defendants' Sixth Amendment right of confrontation. *See, e.g.*, *Vazquez Diaz v.*



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

*Commonwealth*, 487 Mass. 336, 347, 167 N.E.3d 822, 836 (2021) ("The purpose of confrontation under the Sixth Amendment is to enhance the truth-seeking process ... by affording the accused **an opportunity for face-to-face contact with adverse witnesses at trial**; by ensuring that a witness will give his statements under oath, which impresses upon him the seriousness of the proceedings and importance that he testify truthfully; by forcing a witness to submit to cross examination, a practice designed to elicit the truth; and **by aiding the jury in assessing the credibility of a witness by observing his demeanor on the stand.**") (emphasis added, internal quotation marks and citation omitted). *See also* Calfo Decl. Ex. A, ¶ 8 ("The inability for jurors to observe facial expressions of the attorneys when asking questions, and the witnesses when responding to them, significantly impairs their ability to assess and evaluate the evidence. A traditional jury trial that meets constitutional norms finds no equivalent in one that is that is inhibited by masking, social distancing. And physical barriers of plexiglass or other materials.").

Third, keeping jurors in masks during selection and summation makes it difficult for counsel to see body language and evaluate demeanor. As Ms. LaRue has stated, "[f]ace masks impede the ability of seeing, thus understanding, another's expressions and decrease the effectiveness of communications." *See* Calfo Decl. Ex. A, ¶6. A criminal trial placing barriers upon this essential element is prejudicial to the defendants. And as Judge John Coughenour recently noted in the *Seattle Times*, there are "physical cues and a rapport between parties that a juror can only fully observe and appreciate in person." John C. Coughenour, *What Gets Lost When Zoom Takes Over the Courtroom*, *Seattle Times* (Jun. 1, 2021), https://www.seattletimes.com/opinion/what-gets-lost-when-zoom-takes-over-the-courtroom/. This will not happen as it should when the faces of the trial's participants are only half-visible throughout the process.

Mr. Hansen and Ms. Erdmann's futures hang in the balance. Their liberty interests should not be sacrificed for the sake of expediency, when the government has not articulated any prejudice that would result from additional delay until a time when the trial can be conducted in a traditional



LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200 FAX (206) 407-2224

manner, in keeping with longstanding constitutional norms. Both defendants remain willing to execute speedy trial waivers for as long as is necessary to secure these important safeguards to their right to a fair trial.

## IV. CONCLUSION

Defendants Bernard Ross Hansen and Diane Erdmann respectfully submit that the evidence presented at trial will require acquittal on all charges. They remain willing to delay trial so that its integrity will not be impaired by pandemic safety restrictions.

Dated this 21st day of June 2021.

**CALFO EAKES LLP**

*s/Angelo J. Calfo*
Angelo J. Calfo, WSBA No. 27079
Patty A. Eakes, WSBA No. 18888
Anna F. Cavnar, WSBA No. 54413
Henry C. Phillips, WSBA No. 55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 407-2200
Email: angeloc@calfoeakes.com
pattye@calfoeakes.com
annac@calfoeakes.com
henryp@calfoeakes.com

*Attorneys for Bernard Ross Hansen*

**AOKI LAW PLLC**

*s/ Russell M. Aoki*
Russell M. Aoki, WSBA No. 15717
Isham M. Reavis, WSBA No. 45281
1200 5th Avenue, Suite 750
Seattle, WA 98101
T: 206 624-1900
F: 206 442-4396
russ@aokilaw.com
isham@aokilaw.com

**CORR CRONIN LLP**

*s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528
Benjamin C. Byers, WSBA No. 52299
Maia R. Robbins, WSBA No. 54451
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
Telephone: (206) 274-8669
Facsimile: (206) 625-0900
sfogg@corrcronin.com
bbyers@corrcronin.com

*Attorneys for Diane Erdmann*