The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD ROSS HANSEN and DIANE ERDMANN,<br><br>Defendants. | NO. CR 18-92RAJ<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EVIDENCE RELATED TO MS. ERDMANN'S SALE OF PRECIOUS METALS** |

## I.     INTRODUCTION

Defendants, Ross Hansen and Diane Erdmann, have filed a motion *in limine* seeking to exclude evidence that Erdmann sold more than $700,000 of precious metal between March 2016 and June 2017. This motion is untimely, coming three months after the deadline for such motions and on the weekend before trial.

The motion essentially asks the Court to revisit its earlier holding denying Erdmann's motion to exclude evidence of the first $99,460 of this amount, without providing any ground upon which to do so. The motion is based upon a mistaken legal premise – which the Court already has rejected – that the Government should be limited to evidence that relates to the named victims identified in specific counts. It also is based

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals - 1
*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

upon a factual misunderstanding – namely, the mistaken claim that none of the named victims possessed items that matched the metals that Erdmann sold.

The evidence that Defendants controlled large amounts of apparent fraud proceeds at the conclusion of their fraudulent scheme is clearly relevant evidence that should be admitted under Federal Rules of Evidence 401 and 402. Defendants cannot articulate any claim of unfair prejudice that would warrant excluding the evidence under Federal Rule of Evidence 403. As a result, the Court should deny Defendants' motion and admit the evidence.

## II.   FACTS

Defendants are charged in this case with a scheme to defraud customers of the Northwest Territorial Mint (NWTM). The allegations against Defendants include that (1) they misrepresented to customers purchasing bullion from NWTM that they would use the customers' payments to purchase bullion the customers had ordered, and instead used the money for other purposes, including to fulfill purchase orders placed earlier by other customers, to pay NWTM's operating expenses, and to benefit themselves; (2) they defrauded customers who stored bullion at NWTM by using those customers' bullion to fulfill other customers' orders; and (3) they defrauded customers who leased bullion to NWTM by using those customers' bullion for the same purpose. The indictment alleges that the total losses to bullion, storage, and lease customers exceeded $35 million.

The Indictment alleges that Defendants' scheme began no later than 2009, and that it continued until June 2017. *See* Indictment ¶ 12. During the majority of this time, Defendants controlled NWTM's operations. On April 1, 2016, however, Defendants caused NWTM to file for bankruptcy. *See id.* ¶ 10. By April 11, 2016, the bankruptcy court had appointed a trustee, and Defendants had ceased working at NWTM. *See id.* From that date forward, Defendants no longer controlled NWTM's operations.

The Indictment in the case alleges multiple ways in which Defendants converted NWTM customers' funds to their own benefit. For example, the Indictment alleges that,

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals  - 2
*United States v. Bernard Ross Hansen, et a1., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

between 2012 and 2016, while they still controlled the mint.  Defendants took more than $1,000,000 in owners' draws, took an additional $120,000 in cash, and used NWTM funds to pay over $400,000 in personal expenses.  *See id.* ¶ 46.  In addition, as relevant to Defendants' motion, the Indictment alleges that

> HANSEN and ERDMANN used various customer-owned metal that was supposed to be held for the benefit of NWTM customers for their personal benefit.  Between March 2016 and June 2017, ERDMANN sold more than $700,000 worth of precious metals, including gold and silver bullion, and used the proceeds for the benefit of herself and HANSEN.

See id. ¶ 47.

The evidence that supports this allegation includes evidence that, between March 2016 and June 2017, Erdmann sold a total of more than $700,000 of precious metals to six different coin dealers.  One of these sales – the sale of $99,460 of gold to Seattle Coin Shop on March 31, 2016 – was actually conducted by David Huffman, a security guard at NWTM.  *See* Declaration of Isham Reaves, Exhibit 4 (Dkt. No. 235-4) (bankruptcy court order finding that Erdmann gave Huffman a bag containing gold bullion, and that Huffman took the bag to the Seattle Coin Shop, where the owner took half the gold, and then gave Huffman a $99,460 check made out to Erdmann).  Others were conducted directly by Erdmann, herself.

In some cases, documents relating to the sales establish the precise items that were sold.  *See, e.g.,* Exhibit 381 (listing the particular coins sold, for example, 53 one-ounce Golden Eagles).  In other cases, records establish only the total weight of different metals sold.  *See, e.g.,* Exhibit 390, at 3 (listing 32.374 ounces of gold and 4.569 ounces of silver).  In many cases, proceeds of the sales were paid directly by coin shops to lawyers working on behalf of Hansen and/or Erdmann in connection with NWTM's bankruptcy and related matters.  *See, e.g.,* Exhibits 384, 385, and 386 (comprising numerous checks

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals - 3
*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from Renton Coin Shop made out to different law firms). These direct payments helped to conceal Erdmann's involvement in the transactions.

Defendants' motion asserts that the $700,000 of precious metals that Erdmann sold were Erdmann's "personal collection of rare coins and precious metals." Defendant's Mot. at 4. But, the only actual evidence to that effect that Defendants offer in support of their motion appears to be (1) a statement of one witness that NWTM's vault "contained boxes of things [he] thought belonged to Hansen," Declaration of Benjamin Byers in Support of Defendants' Motion to Exclude Certain Evidence Related to the Sale of Ms. Erdmann's Personal Collection of Precious Metals, Exh. 4 (Dkt. No. 291-4), and (2) testimony from one witness in bankruptcy court that the witness "believe[d] that [Erdmann] was" "a coin collector," *id.* Exh. 5 (Dkt. No. 291-5). That evidence scarcely supports a claim that Erdmann legitimately obtained and possessed more than $700,000 of precious coins and metals.

### III. ARGUMENT

This Court should deny Defendants' motion for multiple reasons:

### A. The Motion is Untimely.

Under the Court's most recent scheduling orders, parties' motions *in limine* were due April 2, 2021 – that is, three months ago. Defendants have been on notice since the original Indictment that the Government likely would seek to prove Erdmann's coin sales as part of its case. Indeed, Paragraph 47 of the Indictment is devoted in its entirety to alleging those sales. That fact is enough to put defendants on notice that, if Defendants wished to exclude this evidence, they should have done so by the deadline for filing motions *in limine*.

Defendants seek to excuse their late filing by claiming that the "government's initial witness disclosure did not contain a single coin dealer." See Defendant's Mot. at 2. That appears to be a reference to a preliminary witness list provided more than two years ago, in June 2019, to predecessor defense counsel. Notably, that preliminary
Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals - 4
*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

witness list did include David Huffman, who was involved, and presumably would testify, about the sale of metals to Seattle Coin Shop. Thus, even the preliminary witness list should have confirmed that the Government was likely to introduce evidence of coin sales, and that Defendants needed to move *in limine* to exclude it, if they believed it should be kept out.

Finally, even Defendants admit that the Government's second preliminary witness list, provided on June 1, 2021, contained the names of three coin dealers. The Government's Trial Brief, filed June 21, 2021, also made clear that that Government intended to introduce this information. *See* Government's Trial Brief, at 15 (Dkt. No. 275) (stating that "[t]he evidence will also show that between March 2016 and June 2017, while NWTM was going through the bankruptcy process, Erdmann sold over $600,000 worth of gold, silver, [] palladium, and platinum"). If Defendants wished to exclude this evidence, they certainly should have filed a motion promptly after those disclosures, and not the weekend before trial.

## B.   The Court Already has Decided this Issue.

Erdmann's motion also essentially attempts to renew a claim that this Court already has decided against her. One of the motions *in limine* that Erdmann did timely file was a motion to exclude any reference to Erdmann's sale of metal to pay a retainer to the Tracey Law Group for representation in NWTM's bankruptcy. *See* Defendant Diane Erdmann's Motions in Limine, at 3-4 (Dkt. No. 234). That motion related specifically to the March 31, 2016, sale of $99,460 of gold to the Seattle Coin Shop, and made many of the same arguments Defendants make in their current motion. *See id.*

This Court denied the motion, finding

> Defendant Erdmann seeks to exclude evidence that between March 2016 and June 2017, she sold precious metal from NWTM's vault and use the proceeds to pay a retainer for bankruptcy counsel, the Tracey Law Group.

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals  - 5
*United States v. Bernard Ross Hansen, et a1., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dkt. 258 at 3.  In doing so, the Court expressly rejected Erdmann's argument that a prior bankruptcy court finding – namely, that the bankruptcy trustee had not met his burden of showing the money was stolen -- controlled this Court's determination of what evidence is relevant in this case.  *See id.*

The Court's finding that evidence of Erdmann's sale was both relevant, and not unfairly prejudicial, applies equally to the other sales of metals that Defendants now seek to exclude (many of which also were used to pay lawyers for representation in connection with NWTM's bankruptcy).  As a result, the Court should deny the motion, based on its prior ruling.

## C. Defendants' Motion is Without Merit.

### 1. Evidence of Erdmann's Metal Sales is Relevant

The Court also should deny Defendants' motion because it is without merit. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and []the fact is of consequence in determining the action." Fed. R. Evid. 401.  Relevant evidence is admissible, unless otherwise provided. Fed. R. Evid. 402.

Defendants are accused of committing a massive fraud through which they used NWTM to defraud thousands of victims of more than $35 million in cash and bullion.  In particular, the Indictment alleges that they stole more than $4.9 million of bullion from storage customers, *see* Indictment ¶ 36, and more than $5 million of bullion from lease customers, *see id.* ¶ 45.  The Indictment further alleges that Defendants converted some of this to their personal use, including by selling more than $700,000 of precious metals between March 2016 and June 2017 and using the proceeds for their own benefit.  *See id.* ¶ 47.

Erdmann's possession and sale of a large amount of precious metals – the very items that Defendants are charged with stealing – during the year-plus after the bankruptcy of NWTM is clearly relevant.  The fact that Erdmann sold this large amount

Government's Response to Defendants' Motion to Exclude Evidence Related to Ms. Erdmann's Sale of Precious Metals  - 6
*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of precious metal certainly makes it more likely that Defendants stole precious metals, particularly when Defendants have not offered any substantial support for the claim that Erdmann obtained the metals legitimately.

## 2. Defendants' Arguments for Exclusion Lack Merit

### a. Defendants' Attempts to Distinguish the Items Sold are Baseless

Defendants attempt to undermine this conclusion by arguing that the metals that Erdmann sold derive from a "personal collection of precious metals," Defendant's Mot. at 1, and are not proceeds of the crimes with which defendants are charged. Defendants further claim that the items "are distinct from all of the items reported missing by the customers the government intends to offer as victims in this matter," *id.* at 2, and claim that the evidence should be excluded because it "is irrelevant to . . . whether defendants engaged in mail or wire fraud with regard to the fifteen victims identified by the government), *id.* at 5.

Defendants' claim is not factually correct. First, to take one example, the Government intends to offer testimony from Steven Fox, the victim in Count 15, that Fox traded Hansen more than $1 million in gold, including 229 Austrian Coronas, and was to receive Canadian Maple Leafs in return. Exhibit B to Defendants' motion shows the items that Erdmann sold to Las Vegas Coin Company included six Austrian Coronas, the very items of which Defendants defrauded Fox. Second, many of the records of Erdmann's sales do not identify the specific items sold, but rather indicate only the weight of the metal. *See, e.g.,* Exhibit 390, at 3 (listing 32.374 ounces of gold and 4.569 ounces of silver). As a result, Defendants cannot establish that the items sold were distinct from particular victims who lost gold and/or silver.

Defendants' argument is also based on a legal argument that the Court already has rejected. Defendants are not on trial only for defrauding the victims identified in specific counts. Rather, they are on trial for their entire scheme: that is, for defrauding thousands

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals - 7
*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of bullion, storage, and leasing customers. As this Court held in denying one of Erdmann's prior motions *in limine,*

> Highly apposite and squarely on point is *Loftis*, where the Court clearly indicated the crime charged in a wire fraud prosecution includes not only the specific executions of the scheme alleged . . . but also the overall scheme alleged. . . . Hence evidence of transactions beyond those charged is admissible as proof of the overall scheme to defraud.

Order on Defendant Diane Renee Erdmann's Motions *in Limine*, at 4 (Dkt. No. 258). This same principle applies here. The Government need not link metal sales to particular victims identified in particular counts. Rather, the metal sales need only be relevant to the entire fraud. There is no question (and even Defendants do not try to dispute), that the metals sold were of types belonging to victims of the overall scheme.

### b. The Bankruptcy Court's Ruling Does not Compel a Different Result.

Defendants claim that the issue of defendants' supposedly legitimate ownership of the metals sold "has already been before a court, and conclusively determined," pointing to an August 4, 2016, Memorandum and Order by Bankruptcy Judge Christopher Alston. *See* Defendants' Mot. at 4. That is not true.

As Judge Alston's opinion, which Erdmann filed as an exhibit in support of her earlier motion to exclude, *see* Dkt. No. 235-4, makes clear, Judge Alston did not find that Erdmann owned any of the metals she sold, let alone the entire more-than-$700,000 at issue in this motion. First, Judge Alston, was looking only at Erdmann's first sale of $99,460 of gold on March 31, 2016; and, second, Judge Alston found only that the bankruptcy trustee had failed to prove that Erdmann stole this gold. *See* Dkt. No. 235-4, at 14.

This Court already has rejected the argument that Judge Alston's finding is determinative in this Court. As this Court held in denying Erdmann's earlier motion *in limine*

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals  - 8
*United States v. Bernard Ross Hansen, et a1., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> [t]he defendant's argument is premised upon the contention that because the bankruptcy court found the Trustee had not carried its burden to show the metal sold was stolen from NWTM's vaults, this Court should be bound by that determination in assessing what is relevant evidence in the instant case. The Court finds no such restriction binding on its assessment of what is relevant evidence in the instant matter. The Court notes that not even the bankruptcy court made a finding that the government's proffered evidence was irrelevant, only that it failed to meet the burden of proof.

Order on Defendant Diane Renee Erdmann's Motions *in Limine*, at 2 (Dkt. No. 258).

### c. The Evidence is not Unfairly Prejudicial.

Finally, Defendants claim that the evidence is "unduly prejudicial" and therefore should be excluded under Rule 403. As an initial matter, Rule 403 allows the exclusion of evidence only if it is "unfair[ly] prejudice[ial]," and if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, or the evidence is needlessly cumulative. *See* Fed. R. Evid. 403.

The evidence at issue shows that Erdmann was in possession of more than $700,000 worth of precious metal, the very item that the Government alleges was stolen during the fraud with which Defendants was charged.

The evidence cannot credibly be considered unfairly prejudicial because there is no substantial reason to believe that the metal sold was not proceeds of Defendants' fraud. Defendants have not offered any credible evidence to suggest any other source of the metals other than NWTM. Indeed, the only evidence to that effect that Defendants offer (other than Defendants' assertion) appears to be (1) a statement of one witness that NWTM's vault "contained boxes of things [he] thought belonged to Hansen," and (2) testimony from one witness in bankruptcy court that the witness "believe[d] that [Erdmann] was" "a coin collector."

And they cannot credibly claim that the evidence is cumulative. Rather, the sales offer unique evidence of the large-scale diversion of NWTM customers' funds to

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals - 9
*United States v. Bernard Ross Hansen, et a1., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendants' benefit.  And, such evidence is particularly necessary in this case, in which Defendants are expected to offer evidence of their relatively modest lifestyles to rebut the argument that they committed fraud.

Defendants cite two cases for the proposition that courts should exclude extrinsic evidence concerning collateral issues to avoid mini-trials.  *See* Defendant's Mot. at 8.  Those cases appear to involve the admissibility of evidence concerning prior bad acts.  *United States v. Martz*, 964 F.2d 787, 789 (9th Cir. 1992); *Mincey v. Davis*, 712 Fed. Appx. 642 (9th Cir. 2017).  As such they are irrelevant to the issue before this Court.  The evidence that Defendants seek to exclude is direct evidence – powerful and unique evidence – that they committed the crimes with which they are charged.  As a result, the Court should deny Defendants' motion to exclude the evidence.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to exclude evidence relating to Erdmann's sale of precious metals.

DATED:  this 6th day of July 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Brian Werner*
BRIAN WERNER
BENJAMIN DIGGS
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-7970
E-mail: brian.werner@usdoj.gov

Government's Response to Defendants' Motion to Exclude Evidence
Related to Ms. Erdmann's Sale of Precious Metals  - 10
*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970