HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>      v.<br><br>BERNARD ROSS HANSEN, and<br>DIANE RENEE ERDMANN,<br><br>                      Defendants. | Case No. CR18-0092-RAJ<br><br>**DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29 OR, IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER RULE 33**<br><br>*Note on Motion Calendar*: September 24, 2021 |

Defendants Ross Hansen and Diane Erdmann move for a judgment of acquittal under Fed. R. Crim. P. 29(c), because the evidence at trial was insufficient to prove the elements of mail and wire fraud with respect to both the bullion customers and the storage customers of Northwest Territorial Mint ("NWTM").

The government's case as to the bullion customers relied on two theories of guilt that are both foreclosed by Ninth Circuit precedent: (1) a legal theory that excused the government from proving an intent to cheat, which is a required element of mail and wire fraud under Ninth Circuit law; and (2) a factual theory that relied on the defendants' failure to disclose certain material facts without offering any evidence that the defendants owed any independent duty to disclose those facts, which is required under Ninth Circuit law to prove fraud under an omission theory.

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 1

As for the government's case as to the storage customers, it was missing a crucial piece of evidence, without which the government simply could not prove its case. Specifically, the government offered no evidence of the total amounts of metals that were stored in Dayton, Nevada. Without this evidence, no reasonable jury could find that the defendants' representations that the mint had adequate metals to cover the customers' storage holdings were fraudulent.

These deficiencies, along with other insufficiencies in the government's case, are fatal to the government's charges of mail and wire fraud, and the Court should accordingly enter a judgment of acquittal on all the charges against the defendants.

In the alternative, the Court should grant the defendants a new trial because the verdict in this case was against the weight of the evidence.[1]

## **BACKGROUND**

The government initially charged the defendants with 20 counts of mail and wire fraud relating to Mr. Hansen's role as the owner and CEO of a company called Northwest Territorial Mint (NWTM), and Ms. Erdmann's role as the vault manager and longtime girlfriend of Mr. Hansen. Dkt. 1. Before the trial, the government dismissed five of those counts, leaving 15 counts against each defendant for trial. *See* Dkts. 286, 287, 289. Those 15 counts were composed of three different categories: counts relating to sales of gold and silver bullion by NWTM to customers, counts relating to storage agreements between customers and NWTM, and one count (against each defendant) relating to the leased metal program. At the end of the trial, Mr. Hansen was acquitted on the one count of fraud relating to the leased metal program, and found guilty on 14 counts relating to the bullion and storage programs, while Ms. Erdmann was acquitted on the same lease count, and an additional count related to the bullion program. Dkt. 353.

---

[1] Ms. Erdmann also moves separately pursuant to Fed. R. Crim. P. 33 for a new trial on the basis of the gross disparity in evidence offered against each defendant at trial. Mr. Hansen moves separately pursuant to Fed. R. Crim. P. 33 for a new trial on the basis of the admission of improper legal-opinion evidence.

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 2

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

**A. Evidence as to the bullion sales counts**

The evidence presented by the government showed that NWTM represented to its bullion sales customers that they would *either* receive their metals within a certain amount of time *or* would be entitled to receive a payment in lieu of their metals, if the customer so chose (the customer could also choose to continue to wait for their metals, as many did). *See, e.g.*, Trial Exs. 27, 28. Specifically, if a customer did not receive his or her metals within a certain amount of time, then under the contract that customer was entitled to a payment of *at least* the total amount the customer had paid for the metals *and* possibly more: If the market price of the metals had increased since the purchase, the customer was entitled to receive not just the amount the customer had initially paid for the metal but also the increase in the market value for the metals, thereby allowing the customer to profit off of the deal. *See, e.g.*, Trial Exs. 27, 28. In other words, the contract essentially provided customers with a date by which they would be entitled to receive the benefits of owning the metal— that is, the date by which they could benefit from an increase in the price of the metal. And if the customer did not have physical possession of the metals by that date, the customer benefitted by being insulated from a drop in the market price of the metals he or she had ordered, because the customer could still receive back the entire purchase amount, even if the market price had dropped. During trial, the government elicited testimony that customers were frequently eligible for this payment option for some period of time before they received a physical shipment of their metals.

The government also elicited testimony from some of NWTM's customers about things that NWTM had failed to disclose. For example, multiple customers (including Shawn Boelens, Brent Bassett, Raymond Ferrell, David Carver, and Jason Calhoun) testified that they were unaware that NWTM would deposit customer money into NWTM's general operating account rather than using a customer's money directly to purchase that customer's metal. Also, some customers (including Shawn Boelens and Brent Bassett) testified that they were unaware that the products they were buying were not kept in stock at Northwest Territorial Mint. And multiple customers (including

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 3

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

Frank Robertson, Shawn Boelens, and Jason Calhoun) testified that NWTM did not disclose its financial condition to them.

During the jury-instructions exceptions conference, the government acknowledged that it could not justify pursuing a theory of mail or wire fraud that relied on the defendants' omissions. Nevertheless, the government argued at the conference that the omission of certain facts was relevant to proving that NWTM used deceptive "half truths" to cheat customers.

During closing argument, the government argued that the jury should find Mr. Hansen had the intent to defraud because "the lies [the defendants] told or caused to be told were to get people to part with their money." The government argued that the shipping date provided by NWTM was not a realistic shipping date, and that this, alone, was sufficient evidence to find the defendants intended to defraud NWTM's customers. The jury did not, the government emphasized, "need to find that the defendants never intended to fill customer orders or that they intended to permanently steal customer money." Those issues could only "distract," the government argued, "from what's really at issue in this case, which is whether defendants lied to their customers to get them to part with their money or property, period."

The government also repeatedly urged the jury to find the defendants guilty because of what had not been disclosed to customers. The government argued that the defendants' crime was failing to tell customers that their money would be spent "on old orders and refunds and company bills . . . until [NWTM] c[ould] get enough new money to fill your order a few months down the road."[2] If that had been disclosed, the government argued, "[n]obody would go along for that ride." The government even went so far as to argue that Mr. Hansen should have done what "Warren Buffett" does and written a letter to his customers explaining "how their money [wa]s going to be used."

---

[2] All quotes from trial are based on rough draft transcripts that match counsel's recollection but might not be verbatim.

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 4

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

## B. Evidence as to the storage counts

For the storage counts, the government sought to prove that NWTM had pilfered metal that was being stored by customers, leaving NWTM without enough metal to cover the holdings of its storage customers. To try to prove its case, the government introduced evidence of how much precious metal of particular types was stored at two of NWTM's locations, but it did not do so for a third location: Dayton, Nevada. Evidence at trial showed that NWTM kept a large amount of storage metal in Dayton, Nevada, but rather than introducing an inventory for Dayton that would have listed what types of metals were stored there and in what amounts, the government instead offered only a high-level schematic. *See* Trial Ex. 523. This schematic did not list the particular types of metals or their weights. *Id.* The schematic also did not include other areas in Dayton, Nevada, where precious metals were stored, such as the floor safe and carts inside the vault.

The government's evidence further indicated that most of the metals that customers stored with NWTM were fungible. As Catherine Hopkins, the former general counsel of NWTM and the one-time administrator of the storage program, explained: "A group of stored metal bars could be stored together and for instance if a record said there were 20 bars between three different people, we didn't have to specifically identify that these ten belonged to one person and five and five. It would be 20 as long as it matched up with we have 20 on the storage records." Nothing in the storage contract contradicted this. *See, e.g.*, Trial Ex. 256.

## ARGUMENT

### A. The Court should enter a judgment of acquittal under Rule 29.

Under Rule 29(c), the Court must enter a judgment of acquittal if the government failed to present sufficient evidence to sustain a conviction. *United States v. Miller*, 953 F.3d 1095, 1108 (9th Cir. 2020). The Court can do so even after a guilty verdict, and even if the defendant did not move for acquittal before the case was submitted to the jury. Fed. R. Crim P. 29(c)(3).

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 5

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200  FAX (206) 407-2278

Sufficient evidence must be evidence that, when viewed in the light most favorable to the prosecution, could allow a rational trier of fact to find that the government proved the essential elements of the crime beyond a reasonable doubt. *Miller*, 953 F.3d at 1108. The essential elements of mail and wire fraud are: (1) that the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) that the defendant made statements, representations, or promises as part of the scheme that were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) that the Defendant acted with the intent to defraud; and (4) that the defendant used the mails or interstate wires to carry out an essential part of the scheme. *See United States v. Holden*, 908 F.3d 395, 399 (9th Cir. 2018). A nondisclosure can support a mail or wire fraud charge "only when there exists an independent duty that has been breached by the person so charged." *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016).

The government failed to present sufficient evidence of these elements to sustain a conviction for mail or wire fraud against either defendant. Below, this motion elaborates upon three particular deficiencies in the government's evidence, but these three are not the exclusive or complete list of the deficiencies in the government's case. The defendants contest the sufficiency of the government's evidence under Rule 29 as to all elements and on all bases, and ask the Court to enter a judgment of acquittal on all counts as to both the defendants.

**1. The government did not prove that the defendants intended to both deceive and cheat NWTM's customers.**

In *Miller*, the Ninth Circuit clarified that mere evidence of deception is not enough to sustain a conviction for mail or wire fraud. 953 F.3d at 1101. Instead, the defendant must have intended to *both* deceive the victims *and* cheat them out of something valuable. *Id.* That is, to prove mail or

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 6

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

wire fraud, "some actual harm or injury to the victim's money or property" must have been "contemplated by the schemer." *Id.* at 1102.

This means that even if a defendant induced some customers to make purchases through deception, that *alone* is not sufficient to find the defendants guilty of mail or wire fraud. *See Miller*, 953 F.3d at 1102; *United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir. 2016). Instead, a defendant must have used deception in a way that affected the nature of the bargain; as the Second Circuit has put it, there is "a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *See United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007); *see also United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Moreover, the harm contemplated must affect the very nature of the bargain itself."). In other words: If, at the time of purchase, a defendant intended to provide to the customer what the customer paid for, then the defendant did not have an intent to deceive and cheat that customer. *See Takhalov*, 827 F.3d at 1314 ("[E]ven if a defendant lies, and even if the victim made a purchase because of that lie, a wire-fraud case must end in an acquittal if the jury nevertheless believes that the alleged victims received exactly what they paid for.").

Here, the government's case failed to prove this essential element. Instead, as the government explained in closing argument, the government built its case upon the premise that the jury did *not* "need to find that the defendants never intended to fill customer orders or that they intended to permanently steal customer money." The government therefore focused at trial on proving only that "defendants lied to their customers to get them to part with their money or property, period." But that is not alone sufficient to prove mail or wire fraud. The government instead needed to prove that any lies by the defendants affected the nature of the bargain between NWTM and the customer. There was not sufficient evidence of that here. The contract in this case indicated that

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 7

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

customers would *either* get metal within a certain shipping time *or* would be entitled to a payment of at least the amount they had paid for their metals and possibly more, depending on the market price of the metal. So even if NWTM's shipping date was unrealistic, and even if that deceived some customers into entering the deal, that deception was not aimed at "some actual harm or injury to the victim's money or property." *Miller*, 953 F.3d at 1102. Indeed, even if NWTM failed to ship by the shipping date every single time, under the contract that would not have resulted in actual harm or injury to the victims, who were still entitled to a refund or perhaps even a profit if the price of metal had increased. And the defendants intended to honor that agreement. Indeed, the evidence showed that shipments of metal and refunds were being paid right up until the defendants left the company.

Because the government's evidence did not show that the defendants intended to deceive customers in a way that affected their rights under this contract—that is, their right to either receive the metal by a certain date *or* receive a refund or profit—the Court should find that the government failed to present sufficient evidence of the defendants' fraudulent intent. The Court should therefore enter a judgment of acquittal on Counts 6, 8, 12, 13, 14, 15 (as to Mr. Hansen), 16, 19, and 20.

**2. The government's case as to bullion customers was built on nondisclosures, which cannot support a mail or wire fraud conviction here.**

The government's case as to the bullion customers relied not upon false statements to those customers, but instead upon what was not disclosed to customers—specifically, that their money would not be used directly to purchase their order, that NWTM did not have particular products in stock, and that NWTM was in a precarious financial situation. Yet the government never even argued—let alone presented evidence—that Mr. Hansen or Ms. Erdmann had an independent duty to disclose any of that information to NWTM customers. In fact, the government acknowledged during the exceptions conference that it was not contending that the defendants owed an independent duty to disclose all material facts to customers. Without any evidence that the defendants owed an

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 8

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

independent duty to disclose all material facts to customers, the evidence that the defendants and NWTM failed to disclose to customers certain facts cannot be the basis of a conviction for mail and wire fraud.

The government's contention at the exceptions conference that the omitted facts were simply part of "deceitful half truths" is not availing, because that still requires an *affirmative* statement that is deceitful, rather than merely the omission of material information. *See United States v. Farrace*, 805 F. App'x 470, 473 (9th Cir. 2020). The government proved only that it might have been beneficial to the customer to have additional material facts, not that any affirmative representations were deceitful. That type of omissions theory is insufficient to sustain a mail or wire fraud conviction. Accordingly, the Court should enter a judgment of acquittal on Counts 6, 8, 12, 13, 14, 15 (as to Mr. Hansen), 16, 19, and 20.

### 3. The government failed to prove that the defendants knowingly participated in a scheme to defraud storage customers.

The government's case as to the storage customers relied on the premise that NWTM lacked sufficient precious metals in its control to cover the storage holdings of the customers. But the government failed to present sufficient evidence to allow a reasonable jury to make that finding. In particular, the government failed to prove that there was ever a shortfall in the stored metals.

The evidence presented at trial made clear that nothing in the storage agreement between NWTM and its customers required NWTM to retain a particular customer's specific metals. The metals could instead be aggregated by type, so long as NWTM had sufficient quantities of that metal to cover the storage holdings of its customers. The government failed to prove that NWTM lacked sufficient metal for its customers. The government presented evidence as to the stored metals at two of three locations where NWTM kept metals stored, but failed to provide the jury with any evidence about the types and amounts of metals at the third location: Dayton, Nevada. Without that evidence, the government could not prove that NWTM failed to possess adequate metals to cover the holdings

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 9

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

of its storage customers. Absent proof of that, there is simply no proof that the defendants knowingly engaged in any sort of scheme to defraud the storage customers, and the Court should enter a judgment of acquittal on counts 1, 3, 4, 5, 11, and (as to Mr. Hansen) 15.[3]

### B. In the alternative, the Court should grant the defendants a new trial based on these evidentiary deficiencies.

Even if the government presented sufficient evidence to sustain a conviction as a matter of law, this Court has the authority under Rule 33 to grant the defendants a new trial if the verdict was contrary to the weight of the evidence. *See United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211–12 (9th Cir. 1992). This authority to grant a new trial "is much broader than its power to grant a motion for judgment of acquittal." *Id.* at 1211. In considering a Rule 33 motion, the Court "need not draw inferences from the evidence in favor of the verdict," but "may weigh the evidence on its own and independently consider the credibility of witnesses." *Tibbs v. Florida*, 457 U.S. 31, 38 n.11 (1982).

Here, the weight of the evidence was contrary to the verdict, and the Court should grant the defendants a new trial on all the counts on which they were found guilty. The evidence at trial showed that Mr. Hansen and Ms. Erdmann always intended for customers to receive exactly what they had ordered. NWTM bullion customers ultimately lost money not because Mr. Hansen or Ms. Erdmann were intending to defraud them, but simply because NWTM had a flawed business model and ultimately failed. And as for the storage customers, testimony from two different FBI agents at trial made clear that the government relied on the word of Mark Calvert, the bankruptcy trustee, to prove what stored metal was present at NWTM on the day Mr. Hansen and Ms. Erdmann left the company. Mr. Calvert, though, was not credible. He admitted to giving false testimony

---

[3] As to Count 15, although the alleged victim (Steve Fox) was not a storage customer of NWTM, the absence of an inventory from Dayton, Nevada, nevertheless made it impossible for a reasonable jury to find beyond a reasonable doubt that Mr. Hansen deceived and cheated Mr. Fox by misappropriating metals set aside for Mr. Fox. The jury acquitted Ms. Erdmann of this Count.

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 10

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

1  under oath and made clear that he had both a financial interest and a personal interest in blaming
2  Mr. Hansen and Ms. Erdmann for his own malfeasance.

3  The evidence also weighed against the government's case in numerous other ways,
4  including: the government's reliance on other uncredible witnesses aside from Mr. Calvert; the
5  reliability of the expert witness testimony supporting the defense; the lack of any expert witness
6  testimony supporting the government; the overall dearth of evidence as to Mr. Hansen and
7  Ms. Erdmann's intent; the absence of any inventory from Dayton; the government's reliance on
8  faulty legal-opinion evidence to prove its case; and other evidentiary weaknesses in the
9  government's case and strengths in the defense's case.

10  Because the overall weight of the evidence did not support the government's case, the Court
11  should find that the verdicts as to all counts on which the defendants were found guilty were against
12  the weight of the evidence and grant the defendants a new trial.[4]

13  //
14  //
15  //
16  //
17  //
18  //
19  //
20  //
21  //
22  //
23  //

---

[4] The Court can and should also find that the weight of the evidence in conjunction with the legal errors identified in Mr. Hansen's and Ms. Erdmann's separate Rule 33 motions warrants a new trial under Rule 33.

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 11

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278

**CONCLUSION**

For the foregoing reasons, the Court should enter a judgment of acquittal on all charges against the defendants or, in the alternative, grant them new trials on the charges on which they were found guilty.

DATED this 10th day of September, 2021.

CALFO EAKES LLP

By   *s/Angelo J. Calfo*
Angelo J. Calfo, WSBA #27079
Henry C. Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: (206) 407-2200
Fax:  (206) 407-2278
Email: angeloc@calfoeakes.com
henryp@calfoeakes.com

*Attorneys for Defendant Bernard Ross Hansen*

CORR CRONIN LLP

  *s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528
Benjamin C. Byers, WSBA No. 52299
1001 Fourth Avenue, Suite 3900
Seattle, Washington  98154
(206) 625-8600 Phone
(206) 625-0900 Fax
sfogg@corrcronin.com
bbyers@corrcronin.com

AOKI LAW PLLC

Russell M. Aoki, WSBA No. 15717
1200 Fifth Avenue, Suite 750
Seattle, Washington 98101
(206) 624-1900 Phone
(206) 442-4396
russ@aokilaw.com

*Attorneys for Defendant Diane Renee Erdmann*

DEFENDANTS' MOTION FOR JUDGMENT OF
ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL
(Case No. 18-cr-0092-RAJ) - 12

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2278