The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD ROSS HANSEN and<br>DIANE ERDMANN,<br><br>Defendants. | NO. CR 18-92RAJ<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29, OR IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER RULE 33 (Dkt. #359)** |

At the close of the government's case-in-chief, Defendants moved for an acquittal under Federal Rule of Criminal Procedure 29. The Court denied these motions. Dkt. #340. After Defendants presented their own trial evidence, after closing argument, and after the jury returned a verdict, Defendants have again moved for a judgment of acquittal. Dkt. #359 ("Defendants' Motion"). Defendants' request for acquittal – now a request to overturn the jury's verdict – should again be denied.

Defendants' Motion also includes a request for a new trial pursuant to Rule 33; this request should also be denied.

I. **EVIDENCE AT TRIAL**

After an almost four-week trial, Mr. Hansen and Ms. Erdmann were convicted of multiple counts of mail and wire fraud for their years-long scheme to defraud Northwest Territorial Mint (NWTM) customers. The evidence and testimony at trial showed that

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 1

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendants defrauded both NWTM bullion and storage customers by making material misrepresentations and depriving NWTM customers of their money and property.

### A. Evidence as to bullion customer sales

The evidence at trial was that Defendants caused false statements to be made to NWTM bullion customers to obtain and to keep those bullion customers' money. At the start of the transaction, former sales employees testified that Mr. Hansen caused them to lie to customers about the delivery times. Hansen required that NWTM sales employees tell bullion customers that their orders would be delivered in 8 to 10 weeks. However, as shown at trial, Defendants knew that was a lie; orders were consistently filled weeks if not months beyond that time frame. Defendants' employees knew this was a lie, too, but some testified that they were afraid of losing their job if they told customers the truth. The evidence at trial showed that Mr. Hansen knew the 8 to 10 weeks promise was material; he refused to change the representation when asked by his employees because he believed NWTM would lose bullion customers if they told customers the truth.

NWTM's sales pitch (developed by Mr. Hansen according to the testimony at trial) directed that sales employees mislead bullion customers into believing their money would be used to purchase their orders. For example, sales employees told customers that as the customer pays "we contract for the metals" and "[t]he day after an order is placed we lock in pricing and send payment to our suppliers for the metals." Trial Exhibits 29, 37. However, as shown at trial, bullion customer money was not designated for a particular order but commingled and used to pay company expenses, to pay Defendants, and to buy precious metal to fill older customer orders. In this way, the evidence showed that Defendants ran the NWTM bullion business like a Ponzi scheme – it was dependent on new customer money to fulfill promises to old customers.

Once the customer money was in the door, in order to keep that customer money, Defendants also made misrepresentations to customers about the status of their bullion order. NWTM sent a form email telling bullion customers that their bullion order would be delayed because of "unprecedented number of orders." *See, e.g.*, Trial Exhibit 200.

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 2

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1. Employees testified that this additional delay was not unprecedented but routine, and suggested that this language be changed, but Mr. Hansen refused and persisted in this misrepresentation. NWTM employees testified that customers were also falsely told that orders were filled in the order of payment, but in fact, orders were regularly filled out-of-order when a customer threatened to go to the authorities. Trial Exhibit 144. As another example of a lie to excuse delay, Ms. Erdmann told one victim, D. J., that the United States Mint had temporarily stopped making gold buffalo coins.

Finally, in order to continue to deprive customers of their money, Defendants lied about the availability of refunds. NWTM bullion customers were told that they were entitled to a refund if their bullion order was not timely delivered. At trial, that promise was shown to be empty. Per former employee testimony, when bullion customers requested refunds Mr. Hansen directed his employees to try to convince the customers to wait for their product or to offer customers free additional bullion in exchange for their agreement to wait (*see* Testimony of victim B.J.). When the bullion customers insisted on their refund, Mr. Hansen directed his employees to tell customers it took four to six weeks to send a refund check. To justify this stall tactic, one former NWTM employee testified that she falsely told customers that NWTM had to sell their metals before they could return the customer's money. As shown at trial, at any given time in 2016, the company owed more than $1 million in refunds. Trial Exhibits 50, 86.

At the time NWTM bullion customers placed their orders, Defendants were aware that the orders could not be fulfilled as promised. In her role as vault manager, Ms. Erdmann was aware of all bullion orders and when those orders were promised. She knew what orders were processed for refunds. Hansen had complete control over the finances and knew that millions of dollars of refunds had been requested but remained unpaid. But still, Hansen and Erdmann took orders and made promises to obtain and keep customer money.

As a result of Defendants' various lies, Hansen and Erdmann wrongfully obtained and retained millions of dollars of customer money. At the time Defendants filed for

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 3

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

bankruptcy, there were more than $25 million worth of outstanding bullion orders. Many of these orders had been placed in 2015 and had been promised delivery for months. *See* Trial Exhibit 60. Other customers were more recently induced to pay into the same scheme. Defendants intended to deceive and cheat the bullion customers.

### B. Evidence as to storage customers

The evidence at trial showed that Mr. Hansen promised bullion storage customers that NWTM would safely store their bullion in NWTM's vaults. Mr. Hansen charged the storage customers yearly fees and caused regular storage statements to be mailed or e-mailed to storage customers to advise them of their holdings. *See, e.g.*, Trial Exhibits 260-262, 269-271, 274-275.

Despite the promises made to storage customers, the evidence at trial established that Defendants stole the customer-owned bullion. Evidence at trial showed that customer-owned bullion stored in NWTM vaults was labeled with the storage customer's name. Witnesses testified that, at the direction of Ms. Erdmann and Mr. Hansen, employees removed customer-owned bullion from the vaults and used it to fill other orders. Multiple witnesses testified that they personally removed customer-owned bullion from the vault pursuant to a telephone call or an email from Ms. Erdmann. This testimony was corroborated by multiple emails admitted as exhibits at trial. *See, e.g.*, Trial Exhibits 115-117, 119, 122-124, 147, 151, 526. On other occasions, employees observed Ms. Erdmann and Mr. Hansen take customer-owned bullion out of the vault themselves.

The evidence at trial showed that, by April 2016, a significant amount of the storage customer bullion had been removed from the vault and used for other purposes. After Defendants left the company, NWTM employees testified that they conducted a diligent search for customer-owned metal in NWTM vaults in Federal Way, Auburn, and Nevada. In Nevada, former employee Jeff Goodfellow testified that he conducted a thorough inventory of the Nevada vault and identified a small amount of customer-owned bullion. Across all three locations, the inventories found approximately $1 million worth

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 4

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of customer-owned stored metal – meaning that $4.9 million worth of customer stored metal was missing. *See* Trial Exhibit 493.

## II. JURY INSTRUCTIONS AND VERDICT

At the close of evidence, the Court instructed the jury as to the elements of wire and mail fraud. Dkt. #344 at 19-21. At the Defendants' request, the Court altered the second element of the Ninth Circuit model jury instruction to remove any reference to "facts omitted" as part of the scheme. *See* Ninth Circuit Model Criminal Jury Instruction 8.121, 8.124. Further, at Defendants' request, the Court gave an extra jury instruction describing the "intent to defraud" element. That instruction stated:

> To prove that the defendants committed mail fraud or wire fraud, the government must prove beyond a reasonable doubt that each defendant acted with the intent to defraud. To prove that a defendant acted with the intent to defraud, the government must show as to each count that the defendant acted with the intent to both deceive and cheat. A defendant must act with the intent not only to make false statements or utilize other forms of deception, but also with the intent to deprive a victim of money or property by means of those deceptions.

Dkt. #344 at 24 (Instruction No. 21).

After two days of deliberation, the jury found Defendant Hansen guilty on all counts as to bullion customers and storage customers (Counts 1, 3-6, 8, 11-16, and 19-20); the jury acquitted Mr. Hansen of Count 9 relating to lease customer W.H. The jury found Defendant Erdmann guilty on counts 1, 3-6, 8, 11-14, 16, and 19-20. The jury acquitted Ms. Erdmann on Count 9 and Count 15 relating to customer S.F.

## III. DEFENDANTS' RULE 29 MOTION SHOULD BE DENIED

Federal Rule of Criminal Procedure 29 requires that a trial court, on a defendant's motion, and either after the close of the government's evidence or after all evidence has been submitted, to enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29. A Rule 29 motion should be denied when there is sufficient evidence to sustain a conviction. "Sufficient evidence is that which, view[ed] … in the light most favorable to the prosecution, *any* rational trier of

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 5

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Miller*, 953 F.3d 1095, 1108 (9th Cir. 2020) (citation omitted and emphasis in original).

### A. There was sufficient evidence that Defendants had the intent to both deceive and cheat the bullion customer victims

Defendants' Motion first contends that there was insufficient evidence of Defendants' intent to cheat the bullion customer victims and deprive those victims of money or property. Defendants' Motion at 7-8. There was more than sufficient evidence of this element.

In the *Miller* case, the Ninth Circuit explained that "intent to defraud" for purposes of the wire fraud statute means an intent to both deceive <u>and</u> cheat and so "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *Id.* Based on *Miller*, the Court instructed the jury that it must find that Defendants acted with the intent to "deceive and cheat." Dkt. #344. The instructions further defined intent to defraud, instructing that the "defendant must act with the intent not only to make false statements but also with the intent to deprive a victim of money or property by means of those deceptions." Dkt. #344.

Viewed in the light most favorable to the prosecution, there was sufficient evidence that Defendants intended to deprive the bullion customer victims of money or property. From the beginning of a bullion transaction, the Defendants made knowingly false statements to lure customers to send money to NWTM. Defendants told customers that they could fulfill bullion orders within 8 to 10 weeks. The evidence at trial showed that Mr. Hansen and Ms. Erdmann knew that they could not meet this deadline. Mr. Hansen recognized how important it was to tell this lie – he refused to let NWTM employees change it because it would mean fewer orders and less money. This deadline was important to make it appear to customers that NWTM was a legitimate business that could timely fulfill orders. Defendants backed up this first lie by telling more lies to keep

*United States v. Bernard Ross Hansen, et al.*, CR 18-92RAJ
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 6

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

customer money.  Then, Defendants told more lies about their ability to pay a refund (e.g., we need to sell your metals first, it will take 4-6 weeks for processing).  These continued lies demonstrate an intent to deprive customers of their money.

The defense that Mr. Hansen and Ms. Erdmann intended to provide customers with refunds at some point in the unknown future does not impact the sufficiency of the evidence.  The law of wire fraud is clear that the victim need not be permanently deprived of money or property – this defense was expressly rejected in *Miller*.  *Id.* at 1103 ("this court already considered and rejected the argument that the wire fraud statute requires an intent to permanently deprive a victim of money or property").  Rather, *Miller* found that the wire fraud statute "requires the intent to deprive a victim of money or property, <u>at least momentarily</u>."  *Id.* at 1103 n.10 (emphasis added).  Here, there was sufficient evidence that Defendants intended to deprive NWTM bullion customers for more than a moment, rather customers were deprived of their money for months and months, and some customers were permanently deprived.

Defendants' "benefit of the bargain" cases do not change this analysis.  *See* Dkt. #359 at 7.  First, these cases are from other circuit courts and are not binding on the Court.  Second, these cases are distinguishable on the facts because they involve schemes where the victims were not deprived of money or property.  *See United States v. Takhalov*, 827 F.3d 1307, 1314-15 (11th Cir. 2016) (reversing lower court because defendant should have been allowed to argue that victims received the items paid for); *United States v. Starr*, 816 F.2d 94, 98-99 (2d Cir. 1987) (reversing conviction because victims received mailing services); *United States v. Shellef*, 507 F.3d 82, 109 (2d Cir. 2007) (dismissing indictment because victims received contemplated benefits from sales contract).  And third, even if the Court were to apply these cases, there was sufficient evidence that Defendants' scheme depended "on a misrepresentation of an essential element of the bargain."  Defendants' Motion at 7 (citation omitted).  Indeed, more than just an "essential element of the bargain" the evidence showed that Defendants misrepresented <u>almost everything about the bargain</u> with the bullion customers.

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 7

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendants misrepresented: 1) their ability to deliver bullion; 2) how they would use customer money; and 3) their ability to pay refunds. The victims testified at trial that these misrepresentations were an essential part of their decision to purchase bullion.

**B. There was sufficient evidence of Defendants' affirmative misrepresentations and the jury was not instructed to consider omissions.**

Defendants' Motion next contends that there was insufficient evidence of Defendants' affirmative misrepresentations to bullion customers and instead the jury must have convicted based on the Defendants' omissions. Defendants' Motion at 8-9 ("The government proved only that it might have been helpful to the customer to have additional material facts, not that any affirmative misrepresentations were deceitful"). There was more than sufficient evidence of affirmative misrepresentations.

As discussed extensively above, the evidence showed that Defendants made numerous knowing misrepresentations to bullion customers. Defendants lied about the ability to deliver bullion within 8 to 10 weeks. Defendants lied that customer money was immediately sent to the supplier. Defendants lied to bullion customers about the reasons for delay, including Ms. Erdmann's lies to victim D.J. about the production schedule of the United States Mint. Defendants lied about the availability of refunds, and some customers were even told that NWTM had to sell their metals before they could return the customer's money.

Contrary to the suggestion of Defendants' Motion, the government did not "repeatedly urge[] the jury to find the defendants guilty because of what had not been disclosed to customers." Defendants' Motion at 4. Defendants point to a portion of the government's closing argument that discussed the evidence as to how customer money was actually used by Defendants, that is, to fill earlier customer orders. That argument compared Defendants' representations to customers with the reality of the NWTM business, in order to demonstrate that Defendants' representations were false. The argument was not error, but rather a fair comment on the evidence to explain the misleading impression Defendants created. *See United States v. Farrace*, 805 Fed. Appx.

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 8

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

470, 473 (9th Cir. 2020) ("We disagree with Farrace's contention that the government tried this case as both an affirmative misrepresentation and an omissions fraud case … [t]he government's focus throughout the trial was not on Farrace's silence, but on how he created a misleading impression").

Finally, the jury was instructed in this case that it could consider false or fraudulent statements, which could include deceitful half-truths. The jury was not instructed that it could rely on material omissions as false statements. Dkt. #344.

### C. There was sufficient evidence that the Defendants participated in a scheme to defraud storage customers

Defendants' Motion next contends that there was insufficient evidence to convict Defendants of the storage fraud counts because there was insufficient evidence of a shortfall of storage metal. Defendants' Motion at 9-10. There was significant evidence that storage customer bullion was missing.

Evidence at trial showed that the storage customers understood that NWTM and Mr. Hansen would keep their stored bullion separate and apart from the precious metal to be used in the NWTM business. The testimony showed that it was NWTM's practice to maintain customer storage bullion separately, and stored bullion was labeled with the customer's name. Multiple former NWTM employees testified that Ms. Erdmann directed that this labeled, customer-owned bullion be removed from the vault and used to fill other orders. Employees testified that Mr. Hansen was aware of this practice, and in at least one instance, he participated in the practice. Finally, former employees testified that the amount of customer-owned bullion dwindled over the years. The results of the post-bankruptcy inventory showed that almost $5 million in customer storage was missing from the NWTM vaults.

That most of the customer-owned bullion was missing from the NWTM vaults in April 2016 was consistent with other evidence at trial. There was extensive testimony about how Ms. Erdmann and other NWTM employees scrambled to fill orders to prevent irate customers from turning them into the authorities – one way Erdmann was able to fill

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 9

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

some orders was by stealing from customer storage.  Also, a significant amount of missing customer storage is consistent with the evidence at trial as to the financial condition of NWTM. The company could not afford to buy gold and silver and instead stole storage customers' precious metals. Viewing the evidence at trial in the light most favorable to the prosecution, there was a sufficient evidence for a rational jury to find Defendants guilty on these counts.

In any event, and contrary to Defendants' motion, the jury was not required to make a finding as to whether or not there were sufficient storage holdings at any given point it time – only that Defendants engaged in a scheme to defraud.

## IV. DEFENDANTS' ALTERNATIVE RULE 33 MOTION SHOULD ALSO BE DENIED

The Court should also deny Defendants' alternative Rule 33 motion for a new trial.  Federal Rule of Criminal Procedure Rule 33(a) allows a court, on defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires."  A motion for new trial should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir. 1981) (citation omitted).  A motion for new trial directed to the discretion of the trial judge.  *Id.*; *see also United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012) (reviewing trial court's denial of motion for new trial and noting that "we will only grant the motion in exceptional circumstances in which the evidence weights heavily against the verdict").  A trial court may grant a motion for new trial even when there is sufficient evidence to sustain the verdict, but where in the court's judgment "a serious miscarriage of justice may have occurred." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211-12 (9th Cir. 1992), quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

Defendants' Motion argues that the jury's verdicts were against the weight of the evidence.  Defendants' Motion at 10-11.  As they argued at trial, Defendants claim that the evidence did not show intent to defraud, and NWTM was only a failed business:

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 10

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  "NWTM bullion customers ultimately lost money … because NWTM had a flawed business model."  Defendants' Motion at 10.  However, as described above, there was abundant evidence that Defendants schemed to defraud the bullion customers, namely by telling a series of lies to obtain and keep customer money and running the NWTM business as a Ponzi scheme.

Defendants also reiterate their trial argument blaming Mark Calvert for the almost $5 million in missing customer storage.  Defendants' Motion at 10.  Again, as described above, there was significant evidence that clearly showed that Defendants themselves were responsible for poaching customer-owned bullion.  The evidence at trial showed that NWTM employees conducted a thorough inventory of the customer storage after Defendants left the company and the results of that inventory were supported by the other evidence in this case.

Defendants' new trial motion, rather than point out a miscarriage of justice, simply makes the same arguments they made at trial.  These arguments were resolved by the jury against Defendants and in favor of conviction.  The weight of the evidence strongly supported the verdict and the interests of justice do not require a new trial.

//
//

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 11

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

The government respectfully requests that the Court deny Defendants' motion for acquittal pursuant to Rule 29, as well as Defendants' alternative motion for a new trial pursuant to Rule 33.

Dated this 17th day of September 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Brian Werner*
BRIAN WERNER
BENJAMIN DIGGS
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-7970
E-mail: brian.werner@usdoj.gov

*United States v. Bernard Ross Hansen, et al., CR 18-92RAJ*
Government's Response to Defendants Motion for Judgment of Acquittal, or in the Alternative, for a New Trial- 12

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970