The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                     Plaintiff,

     v.

BERNARD ROSS HANSEN and
DIANE ERDMANN,

                  Defendants.

No. CR 18-92RAJ

**GOVERNMENT'S RESPONSE TO DEFENDANT HANSEN'S MOTION FOR A NEW TRIAL UNDER RULE 33 ON GROUNDS OF IMPROPER USE OF LEGAL OPINION EVIDENCE (Dkt. #360)**

The government respectfully requests that the Court deny Defendant Ross Hansen's Motion for a New Trial (Dkt. #360). The Court has already ruled on this issue. Prior to trial, the Court allowed certain testimony from attorneys for the limited purpose of showing notice to Mr. Hansen. At trial, evidence and testimony was admitted consistent with the Court's Order. The jury was instructed on how to consider the attorney testimony. There was no error, no injustice, and certainly not such a grave injustice that the Court should grant a new trial.

## I.    BACKGROUND

### A.    The Court ruled on this issue prior to trial

Mr. Hansen was charged with a years-long scheme to defraud the customers of Northwest Territorial Mint (NWTM). At trial, Mr. Hansen's defense to these charges

Response to Defendant Hansen's Motion for a New Trial (Dkt. #360)
*United States v. Bernard Ross Hansen, et al.*, CR18-92RAJ — 1

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   was that he lacked the intent to defraud NWTM's bullion and storage customers.  Mr.

2   Hansen claimed that the way he ran the NWTM business was consistent with the

3   promises made to NWTM customers.  At various times in the trial, Mr. Hansen, through

4   counsel, allowed that Mr. Hansen's "business model" was not the best way to run a

5   business, but that Mr. Hansen did not intend to deceive or cheat customers.

6   However, two former in-house attorneys, Catherine Hopkins and Greg Fullington,

7   had directly told Mr. Hansen that his "business model" was fraudulent.  In 2011, Ms.

8   Hopkins, told Mr. Hansen that it violated the NWTM bullion storage agreements to use

9   storage bullion to fulfill other orders and that practice could result in criminal charges.

10  *See* Dkt. #232-4 (Hopkins Memorandum).  In 2015, Mr. Fullington told Mr. Hansen that

11  NWTM was not fulfilling bullion orders as promised, and that could be the basis for

12  criminal charges.  *See* Trial Exhibit 11 (Fullington Memorandum).

13  Prior to trial, Mr. Hansen filed a motion *in limine* to exclude this testimony.  Dkt.

14  #231.  Mr. Hansen objected that these witnesses would offer legal opinion testimony by

15  testifying to conversations and statements that they made to Mr. Hansen.  The

16  government opposed this motion because the witnesses were fact witnesses, not expert

17  witnesses, and therefore any legal opinions were not offered for their truth.  Dkt. #246.

18  The government explained that the evidence would be offered to prove that Mr. Hansen

19  was advised by NWTM's attorneys that his business practices were illegal and

20  fraudulent, and that Hansen persisted in that conduct nevertheless, and thus as evidence

21  from which the jury can infer that Hansen acted with fraudulent intent.

22  The Court ruled that the witnesses could testify about what they told Mr. Hansen

23  about his business practices.  Dkt. #255 at 3.  The Court required a limiting instruction to

24  make clear to the jury that any testimony that included a legal opinion is not offered for

25  its truth, but for its effect on the listener, Mr. Hansen.  Dkt. #255 at 2-3.

26  //

27  //

28

Response to Defendant Hansen's Motion for a New Trial (Dkt. #360)
*United States v. Bernard Ross Hansen, et al.*, CR18-92RAJ — 2

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.     Trial evidence and jury instructions were consistent with the Court's Order**

At trial, the former in-house attorneys' testimony was consistent with the Court's ruling.  The witnesses testified as to their prior statements to Mr. Hansen about his business practices and were subject to extensive cross-examination.

At trial, Mr. Hansen elicited similar statements from a different attorney.  On the second day of trial, prior to testimony from either Ms. Hopkins or Mr. Fullington, Mr. Hansen offered and the Court admitted a 2016 memorandum authored by Dino Vasquez of the Karr Tuttle law firm that described NWTM's purported compliance with the Consent Decree.  Trial Exhibit 1078.  The memo was written on Karr Tuttle letterhead and stated: "we believe Northwest Territorial Mint's practices and procedures are substantially compliant with the Consent Decree."  Trial Exhibit 1078 at 2.

At the close of evidence, the Court instructed the jurors about how to consider the testimony from these lawyers in Instruction No. 12:

> You have heard testimony from, and seen documents prepared by, attorneys Greg Fullington, Dino Vasquez, and Catherine Hopkins.  To the extent Mr. Fullington, Ms. Hopkins, or Mr. Vasquez testified about, or otherwise provided their opinions as to matters of law, such testimony and documents are admitted only for the purpose of what information was communicated to Ross Hansen regarding these matters, not for the truth of the legal opinions.

Dkt. #344 at 14.  The Court offered to read a similar instruction about the testimony of lawyers earlier in the trial.  The Court raised the issue of the *Graf* jury instruction during the testimony of Ms. Hopkins, but defense indicated that it preferred not to instruct the jury at that time.

**C.     There was more evidence of Mr. Hansen's intent to defraud than the testimony of the in-house lawyers cited in Defendant's motion**

In addition to the testimony of these attorneys, there was substantial other evidence admitted at trial about Defendants' scheme to defraud.  Defendants made numerous false statements to NWTM customers to obtain and retain their money.  These false statements included lies about the time to deliver bullion, lies about the reasons for

Response to Defendant Hansen's Motion for a New Trial (Dkt. #360)
*United States v. Bernard Ross Hansen, et al.*, CR18-92RAJ — 3

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   delays, and lies about the ability to provide refunds.  These false statements are discussed

2   in the government's response to Defendants' Joint Rule 29 Motion.  Mr. Hansen's

3   management decisions further showed his intent to defraud.  Several former NWTM

4   employees testified that Defendants refused to allow employees to properly track

5   inventory and expenses; Hansen told one employee that he wanted internal controls that

6   he could fudge.  Mr. Hansen further hid the disastrous financial situation at NWTM by

7   refusing to file federal income tax returns after tax year 2010.

8        There was also substantial evidence admitted at trial about the Defendants' intent

9   to defraud the storage customers.  Multiple former NWTM employees provided detailed

10  testimony about the Defendants' thefts from storage.  Some of these employees told Ms.

11  Erdmann that this practice was robbing Peter to pay Paul.  *See, e.g.,* Trial Exhibit 122.

12  Further, multiple witnesses testified that Mr. Hansen refused to allow an inventory of the

13  vaults to determine storage customer holdings.

14  **II.   ARGUMENT**

15       The Court should deny Mr. Hansen's motion for a new trial.  Federal Rule of

16  Criminal Procedure Rule 33(a) allows a court, on defendant's motion, to "vacate any

17  judgment and grant a new trial if the interest of justice so requires."  A trial court may

18  grant a motion for new trial when in the court's judgment "a serious miscarriage of

19  justice may have occurred." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d

20  1206, 1211-12 (9th Cir. 1992), quoting *United States v. Lincoln*, 630 F.2d 1313, 1319

21  (8th Cir. 1980).

22       The Court's admission of certain testimony from NWTM in-house counsel did not

23  create a miscarriage of justice, especially considering the Court's limiting instruction.

24       This testimony was not a surprise to Defendants – prior to trial, the Court ruled

25  that the testimony of the former in-house counsel was admissible, not for the truth of the

26  statements, but as evidence as to what Mr. Hansen was told by his attorneys about his

27  business practices.  Dkt. #255.  In so ruling, the Court followed the Ninth Circuit's

28  decision in *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010).  At trial in *Graf*, the

Response to Defendant Hansen's Motion for a New Trial (Dkt. #360)
*United States v. Bernard Ross Hansen, et al.*, CR18-92RAJ — 4

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    government admitted testimony from an attorney who testified that he advised another

2    client that marketing these insurance plans would be criminal because they did not

3    comply with state or federal law and communicated this opinion to the defendant. *Id*. at

4    1164.  The government also introduced a letter from the attorney's law firm stating that

5    the plans did not comply with federal law.  *See id*.  This evidence was admitted with a

6    limiting instruction.  On appeal, the Ninth Circuit held that the attorney's testimony

7    informing the defendant that the plans "did not comply with state and federal law and that

8    marketing them would be a crime was admissible to show that [the defendant] was on

9    notice that his conduct was illegal," and that because the evidence was properly offered

10   "not to prove that the actions were illegal, but to show that the defendant had been

11   warned of the illegality." *Id.* at 1165 (citation omitted).  Like *Graf*, attorneys told Hansen

12   that his business practices were illegal but he persisted in those practices.

13          At trial, consistent with the Court's Order, the former in-house counsel testified as

14   to what they told Mr. Hansen, but they did not offer legal opinions.  Mr. Hansen also

15   elicited attorney statements about Hansen's business practices.  Specifically, on the

16   second day of trial, Mr. Hansen admitted a lengthy memo prepared by an outside

17   attorney, Mr. Vasquez, and addressed to Mr. Hansen.  That memo asserted that NWTM

18   was complying with the Consent Decree.  Trial Exhibit 1078.

19          Defendant's new trial motion does not mention the Court's jury instruction on this

20   precise issue.  *See* Dkt. #359 at 1-5.  The Court instructed the jury at the end of the case

21   as to how to consider legal opinion testimony (the Court offered to instruct the jury

22   during Ms. Hopkins' testimony, but the defense declined).  In the writing jury

23   instructions, the Court instructed that to the extent a lawyer testified as to an opinion, that

24   testimony was not admitted for its truth but for the purpose of what was communicated to

25   Mr. Hansen.  Dkt. #344 at 14.  Juries are presumed to follow such limiting instructions.

26   *See United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995).  As the jury was

27   properly instructed on how to consider this evidence, the interests of justice do not

28   require that the Court order a new trial.

Response to Defendant Hansen's Motion for a New Trial (Dkt. #360)
*United States v. Bernard Ross Hansen, et al.*, CR18-92RAJ — 5

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        Defendant's motion essentially asks the Court to reconsider its earlier ruling.

2   Motions for reconsideration are disfavored.  Local Rules, W.D. Wash. CrR 12(b)(13)(A).

3   A motion for reconsideration is ordinarily denied "in the absence of showing of manifest

4   error in the prior ruling or a showing of new facts or legal authority which could not have

5   been brought to [the Court's] attention earlier…"  *Id*.  Here, Mr. Hansen fails to provide

6   the Court with any new facts or authority.  This matter has been decided by the Court.

7        Finally, the attorney testimony was not the only evidence of Mr. Hansen's

8   fraudulent intent, indeed, there was substantial other evidence admitted at trial that

9   showed Mr. Hansen's intent to defraud.  Defendants consistently lied to NWTM

10  customers to cause them to send in their money, lied to keep the customers' money, and

11  lied to avoid having to pay refunds.  Mr. Hansen used customer money for his own

12  purposes and not as disclosed to customers.  Defendants regularly stole from the NWTM

13  storage customers and hid this practice by refusing to allow an inventory.  The jury could

14  have found that Mr. Hansen had the intent to defraud NWTM customers based on this

15  other evidence.

16  **III.    CONCLUSION**

17       Defendant Hansen's motion for a new trial should be denied.

18       Dated this 17th day of September, 2021.

19                         Respectfully submitted,

20                         TESSA M. GORMAN
                       Acting United States Attorney

21

22                         *s/ Brian Werner*

23                         BRIAN WERNER
                       BENJAMIN DIGGS

24                         Assistant United States Attorneys
                       700 Stewart Street, Suite 5220

25                         Seattle, Washington 98101

26

27

28

Response to Defendant Hansen's Motion for a New Trial (Dkt. #360)
*United States v. Bernard Ross Hansen, et al.*, CR18-92RAJ — 6

UNITED STATES ATTORNEY
700 STEWART ST, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970