THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>BERNARD ROSS HANSEN and DIANE<br>RENEE ERDMANN,<br><br>            Defendants. | No.  CR18-092RAJ<br><br>**ORDER ON DEFENDANTS'<br>MOTION FOR JUDGMENT OF<br>ACQUITTAL UNDER RULE 29<br>OR, IN THE ALTERNATIVE,<br>FOR A NEW TRIAL UNDER<br>RULE 33** |

## I.   INTRODUCTION

THIS MATTER comes before the Court upon defendants' Motion for Judgment of Acquittal Under Rule 29 or, in the Alternative, for a New Trial Under Rule 33.  Dkt. # 359.  Having considered the motion, the government's response (Dkt. # 362), and the files and pleadings herein, the Court **DENIES** the motion.

## II.   DISCUSSION

Defendants' motion has two parts.  First, defendants seek acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure.  Second, defendants seek, in the alternative, a new trial under Rule 33(a).  The Court addresses both requests in turn.

### A.  Motion for Judgment of Acquittal

Defendants' motion is principally founded on Rule 29(c).  Both defendants move for acquittal because, according to them, there was insufficient evidence at trial for the jury to convict them of mail and wire fraud.  To that end, defendants raise three

ORDER – 1

arguments.  First, they say that, to prove mail or wire fraud, the government was required to prove an intent to deceive and cheat, yet there was no evidence of an intent to cheat Northwest Territorial Mint ("NWTM") customers.  Second, they say that the government's case was improperly based on omissions, not misrepresentations.  Finally, they say that the government failed to prove that defendants participated in a scheme to defraud storage customers.

All three arguments fail, and defendants are not entitled to a new trial under Rule 29.  Their arguments fail because, at trial, there was ample evidence to find that both defendants had made misrepresentations to NWTM customers, depriving them of their money or property.  Viewing that evidence in light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found the essential elements of mail and wire fraud beyond a reasonable doubt.

### i.   Legal Standard

When evidence is insufficient to sustain a conviction, Federal Rule of Criminal Procedure 29 permits a court to set aside a jury verdict and enter an acquittal.  Fed. R. Crim. P. 29.  Under Rule 29, the court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).  The court's inquiry is two-fold.  *Id.*  First, the court must "consider the evidence presented at trial in the light most favorable to the prosecution."  *Id.* at 1164.  "Conflicting evidence is to be resolved in favor of the jury verdict, and 'all reasonable inferences are to be drawn in favor of the government.'"  *United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir. 2007) (quoting *United States v. Alvarez–Valenzuela*, 231 F.3d 1198, 1201-02 (9th Cir. 2000)).  Second, the court must determine whether the evidence, "so viewed," is adequate to allow "*any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *Nevils*, 598 F.3d at 1164

ORDER – 2

(emphasis in original) (alteration omitted) (quoting *Jackson*, 443 U.S. at 319).

### ii. Intent to Deceive and Cheat

Defendants first argue that mail and wire fraud, under *United States v. Miller*, require the intent to deceive and cheat and that the government failed to prove the "essential element" of cheating.  953 F.3d 1095, 1103 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1085, 208 L. Ed. 2d 539 (2021); Dkt. # 359 at 6-8.  Defendants say that there was no evidence of cheating because, with respect to NWTM's bullion customers, defendants "intended to honor th[eir] agreement."  Dkt. # 359 at 8.  According to defendants, their representations to bullion customers simply maintained that the customers would *either* receive their metals within a certain amount of time *or* they would be entitled to receive a payment for their bullion.  Dkt. # 359 at 3.  Defendants say that they intended to make good on those promises and thus had no intent to "cheat" NWTM customers.  *Id.* at 6-9.

The Court agrees that, under *Miller*, mail and wire fraud require an "intent to deceive *and* cheat."  953 F.3d at 1103 (emphasis in original).  That is, "mere deception" is not enough.  *Id.* at 1101.  A defendant must act not only with the intent to make false statements or use other forms of deception; the defendant must also use that deception "to deprive a victim of money or property."  *Id.*

Here, however, there was ample evidence that defendants not only deceived customers but also cheated them, by depriving them of their money or property.  The government's summary of that evidence accurately reflects the Court's recollection: Defendants caused false statements to be made so that they could obtain bullion customers' money.  Dkt. # 362 at 2-3.  They caused former employees to lie about delivery times, informing customers that their orders would be delivered in 8 to 10 weeks, even though defendants knew that those promises were false.  *Id.*  Defendants also misled customers into believing that their money would be used to fulfill their bullion orders, when in fact the money was commingled to pay company expenses and fill past metal orders.  *Id.*  There was also evidence that, upon customer inquiry, defendants made

ORDER – 3

misrepresentations about the status of their bullion orders, for example by representing that orders were filled in order of payment or that delays were caused by unprecedented demand, when neither of those things were true. *Id.* Finally, there was evidence that defendants lied about the availability of refunds, such as by falsely telling customers that NWTM had to sell metals before returning customer money. *Id.* In the end, these misrepresentations caused an enormous deprivation: at the time of the NWTM bankruptcy, there were more than $25 million worth of outstanding bullion orders. *Id.* In all, the Court finds that this is ample evidence of defendants depriving NWTM customers of their money, hence ample evidence of defendants "cheating" customers. And, relying on this evidence, a rational jury could have found this element satisfied beyond a reasonable doubt.

What is more, defendants' "intent to honor their agreement" argument is akin to an "intent to repay" argument, which was squarely rejected by the Ninth Circuit in *Miller*: the "intent[] to pay back the funds . . . deceptively obtained . . . is not a defense at all." 953 F.3d at 1103. To prove mail or wire fraud, the government did not need to prove that defendants intended to "permanently deprive a victim of money or property," as defendants here seem to suggest. *Id.*

Lastly, defendants cite a string of out-of-circuit cases to support a "nature of the bargain" argument. Dkt. # 359 at 6-8. According to defendants, there can be no fraud if a deceptive scheme does not "affect[] the nature of the bargain" between NWTM and its customers. *Id.* Defendants argue that, whatever deception they may have committed, they did not intend to deprive customers of their bargain. That bargain, defendants say, was simply that customers would get their metals within a certain time or they would get a payment. Defendants argue that there can be no fraud because they intended to deliver on that bargain.

This argument fails for many reasons. To start, the authority comes from other circuits and is therefore not binding on this Court. More importantly, this "nature of the

ORDER – 4

bargain" argument goes the same way as defendants' "deceive and cheat" argument above.

The "nature of the bargain" doctrine posits that "deceiving" and "defrauding" are different: one may deceive another without defrauding them.  *United States v. Takhalov*, 827 F.3d 1307, 1312-13 (11th Cir.)  What makes deceit fraudulent, and thus criminal, is using deceit to deprive another of something of value.  *Id.*

Judge Thapar illustrated the doctrine best:

> Consider the following two scenarios. In the first, a man wants to exchange a dollar into four quarters without going to the bank. He calls his neighbor on his cell phone and says that his child is very ill. His neighbor runs over, and when she arrives he asks her to make change for him. She agrees; the quarters pass to the man; the dollar passes to the woman; and they part ways. She later learns that the child was just fine all along. The second scenario is identical to the first, except that instead of giving the woman a true dollar, he gives her a counterfeit one.

> The first scenario is not wire fraud; the second one is. Although the transaction would not have occurred but-for the lie in the first scenario— the woman would have remained home except for the phony sickness—the man nevertheless did not intend to "*depriv[e] [the woman] of something of value* by trick, deceit, [and so on]." *Bradley*, 644 F.3d at 1240. But in the second scenario he did intend to do so.

> More specifically, the difference between the scenarios is that, in the first scenario, the man did not lie about the nature of the bargain: he promised to give the woman a true dollar in exchange for the quarters, and he did just that. In the second, he lied about the nature of the bargain: he promised to give her a true dollar but gave her a fake one instead.

*Id.* (emphasis added).

The "deceiving" and "defrauding" distinction set forth in *Takhalov* is virtually identical to the "deceiving" and "cheating" distinction outlined in *Miller*.  953 F.3d at 1101-03.  Hence, defendants' "nature of the bargain" argument produces the same result. As explained above, there was ample evidence that defendants both deceived and defrauded NWTM customers.  This was not a matter of defendants merely using

ORDER – 5

1   deception to induce a deal and no more.  Instead, defendants used deception to defraud

2   customers of something of value, namely millions of dollars.  Thus, the entire nature of

3   the bargain proved to be a lie, and defendants are not entitled to a new trial on these

4   grounds.

5       **iii. Omissions and Nondisclosures**

6       Defendants next argue that there was insufficient evidence of defendants' false

7   statements.  Dkt. # 359 at 8-9.  They say that, in fact, the government's case rested not on

8   false statements to bullion customers but rather "what was not disclosed" to those

9   customers.  In effect, defendants say, the government advanced an omissions fraud

10  theory, which must fail given that defendants owed no duty to disclose information to

11  their customers.

12      The Court denies defendants' premise:  This is not an omissions case.  Nor did the

13  government try it as one.  Instead, at trial, the government solicited and relied on

14  evidence of defendants' affirmative misrepresentations.  As set forth in the previous

15  section, there was copious evidence of defendants' misrepresentations about delivery

16  times, use of customer money, status of previous bullion orders, and availability of

17  refunds.  What is more, when instructing the jury, the Court did not instruct them to

18  consider omitted facts.  *Compare* Dkt. # 344 at 19-21 *with* Model Crim. Jury Instr. 9th

19  Cir. 8.121 & 8.124 (2021) (omitting "omitted facts" instruction).  The Court did instruct

20  the jury, however, that they were permitted to consider "[d]eceitful statements of half-

21  truths."  Dkt. # 344 at 19-21.

22      To the extent that the government argued about what was not disclosed to NWTM

23  customers, those arguments were directed at defendants' overall fraudulent scheme,

24  which included deceitful half-truths.  *See United States v. Woods*, 335 F.3d 993, 997-

25  1000 (9th Cir. 2003); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979)

26  ("Deceitful statements of half-truths or the concealment of material facts is actual fraud

27  under the statute.").

28  ORDER – 6

Thus, defendants' second argument fails on the facts and the law.  Viewing all the evidence in the government's favor, the Court concludes that there was sufficient evidence to find affirmative misrepresentations and a fraudulent scheme.

### iv. Storage Customers

Finally, defendants argue that there was insufficient evidence of a fraudulent scheme with respect to NWTM storage customers.  Dkt. # 359 at 9-10.  Besides defrauding bullion customers, defendants were also convicted for defrauding NWTM's storage customers, those who did not buy bullion from NWTM but instead stored the bullion they already owned with the company.

NWTM stored customer bullion at three locations.  Defendants say that the government's evidence was insufficient because the government failed to put forth enough evidence about one of the three locations.  Dkt. # 359 at 9.  Defendants acknowledge that the government presented evidence that two of three NWTM storage locations had depleted bullion stores.  *Id.*  Yet defendants say that there was no evidence about the stored bullion in the company's third storage location in Dayton, Nevada.  *Id.*  Without that evidence, they say, "the government could not prove that NWTM failed to possess adequate metals to cover the holdings of its storage customers."  *Id.* at 9-10.

Like defendants' previous arguments, this argument also fails.  There was sufficient evidence for a reasonable jury to conclude that defendants defrauded NWTM's storage customers.  The government's summary of that evidence accurately reflects the Court's recollection:  There was testimony that storage customers understood that NWTM and defendants would keep the customers' stored bullion separate from the bullion used in NWTM's business. Dkt. # 362 at 4-5.  Testimony further revealed that defendants removed storage-customer-owned bullion from storage to fulfill bullion customer orders.  *Id.*  In all, the evidence revealed that across all NWTM locations about $5 million worth of stored bullion was missing.  *Id.*

A lack of evidence about bullion stores at Dayton does not, itself, warrant relief

ORDER – 7

under Rule 29, as defendants say.  To prove mail and wire fraud, the government only needed to prove a scheme or artifice to defraud.  It did not need to prove the specific stored amounts at Dayton or prove that NWTM was unable to cover the holdings of storage customers.  Instead, the government only needed to prove to a jury that defendants defrauded NWTM's storage customers.  On that front, viewing the evidence in the government's favor, the Court concludes that there was sufficient evidence for a reasonable jury to find just that.  Here, there was evidence that defendants stole stored customer bullion and dwindled storage reserves by millions of dollars.

### B.  Motion for a New Trial

Federal Rule of Criminal Procedure Rule 33(a) allows a court, on defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires."  Unlike a Rule 29 motion, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."  *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).  That said, a motion for a new trial is to be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict."  *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir. 1981).  Moreover, a trial court may grant a motion for new trial where, in its judgment, "a serious miscarriage of justice may have occurred."  *Alston*, 974 F.2d at 1211-12.

The Court finds no miscarriage of justice, and no need for a new trial, here.  Defendants merely rehash their trial arguments and argue that the "weight of the evidence was contrary to the verdict."  Dkt. # 359.  As explained above, the evidence supporting defendants' fraud conviction was prolific.  Even evaluating the evidence on its own, and not in the government's favor, the Court still concludes that the evidence weighs heavily in favor of conviction and that the jury conviction was greatly supported.

/ / /

ORDER – 8

### III.  CONCLUSION

For the foregoing reasons, the defendants' motion is **DENIED.**  Dkt. # 359.

DATED this 21st of April, 2022.

_____

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9