THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br>      v.<br><br>BERNARD ROSS HANSEN,<br><br>                        Defendant. | Case No. CR18-0092-RAJ<br><br>ROSS HANSEN'S SUPPLEMENTAL SENTENCING MEMORANDUM |

The limited discovery that the government has provided pertaining to Mr. Hansen's failure to appear suggests that this was an act of foolish desperation.[1] There was no grand plan to leave the country; there were no stockpiles of hidden precious metals; there was no airplane waiting. Instead, it appears that Mr. Hansen simply feared that he might not live to see the end of his prison sentence, and so he panicked in the hours before sentencing, and pursued a few more days of freedom.

---

[1] All facts contained in this memorandum are derived from two FD-302 reports provided by the government on the day this memorandum was due to be filed, May 31, 2022. The defense has not had an opportunity to investigate the accuracy of those reports and relies on them here without admitting to them. The defense reserves the right to contest any of the facts in those reports.

BERNARD ROSS HANSEN'S
SUPPLEMENTAL SENTENCING MEMORANDUM
(Case No. CR18-0092 RAJ) - 1

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

According to the government, Mr. Hansen said that he decided only two hours before his sentencing hearing not to appear, and that he did so because he "felt that every day he . . . [was] on the run was one more free day."[2] Those are the words of a man who—when facing one of the scariest days of his life and feeling that his health would keep him from ever seeing the outside world again—made a foolish and reckless decision.

In total, Ross spent eleven days living out of cheap hotels and an old minivan. When caught, he did not try to run, or fight. He instead told the agents that "he was surprised it took the FBI so long to find him." He was cooperative, agreeing to talk with the agents and volunteering to the agents that there were firearms in the minivan.

Foolish as it was, Mr. Hansen's recent lapse in judgment has not changed the fundamental issues for sentencing in this case. The facts of the underlying offenses certainly have not changed. It remains true that Mr. Hansen was not motivated by personal greed, and that he would have preferred for all his customers to get what they had ordered from him, so that his business would not have collapsed. *See* Sentencing Mem., Dkt. 453 at 6–7. And it remains true that Mr. Hansen still did not make himself wealthy as the CEO of his multimillion-dollar business, even though it would have been easy for him to have done so. *See id.* Indeed, the limited discovery the defense has received about Mr. Hansen's non-appearance *supports* just how little Mr. Hansen benefitted from the offense. He did not flee in a private plane, or a yacht, but in an 18-year-old Mazda minivan. He did not have a secret stash with hundreds of thousands of dollars of cash. He had less than $1,000 in his wallet. And the minivan contained a modest assortment of toiletries, medications, and, based on the limited discovery provided by the government, what appear to have been the last remaining

---

[2] The quotes attributed to Ross Hansen are statements attributed to him in the FD-302 reports, but are likely not verbatim, and the quotations to them should not be construed as any sort of admission about what Mr. Hansen may or may not have said.

BERNARD ROSS HANSEN'S
SUPPLEMENTAL SENTENCING MEMORANDUM
(Case No. CR18-0092 RAJ) - 2

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

coins and other novelty items and mementos he had from the multimillion-dollar mint he used to run. He "knew the money wouldn't last too long," he told the agents, and that certainly appears to have been true. It only underscores that this offense was never about enriching Mr. Hansen at the expense of others.

Mr. Hansen is also still in poor health, and that fact still warrants substantial consideration by the Court at sentencing. *See id.* at 7–9. The limited discovery provided by the government does not suggest that Mr. Hansen is somehow no longer the seriously unhealthy man he was just a few months ago. Quite the opposite, in fact. The discovery shows that he took medications with him, asked to use them before being transported to jail, and experienced low blood sugar during the short transportation back to Seattle. His poor health warranted serious consideration before Mr. Hansen failed to appear, and it still warrants serious consideration now.

The change in the recommendation by the probation office—increasing the recommended sentence by nearly 50%, from seven to ten years—is simply not warranted. For one, much of the change in probation's recommendation appears to stem from a perception that Mr. Hansen had a serious plan to live out his days in a quiet coastal community. *See, e.g.*, Probation Rec. at 7 ("Mr. Hansen appears to have believed he was entitled to a 'quiet life' on the Washington Coast."). But the discovery paints a much different picture; it depicts a man who panicked, gathered what little he had left in life, and then lived out only a few days in cheap hotels before getting caught, as he knew he would. He may have said he wished he could live out his days in a coastal community, but as he acknowledged in the interview he did after he was arrested, he did not have the resources nor any realistic plan to do so, and he knew it.

Probation also cites to Mr. Hansen's purported danger to the community in changing its recommendation, but there is no evidence that anyone was in any specific danger from him.

BERNARD ROSS HANSEN'S
SUPPLEMENTAL SENTENCING MEMORANDUM
(Case No. CR18-0092 RAJ) - 3

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

Although there may have been firearms in the minivan, Mr. Hansen was himself unarmed, even when walking out in public, knowing the FBI was looking for him. He did not resist arrest, but instead willingly submitted, without incident, told the agents about the firearms in the minivan, and then cooperated, telling the agents about what had happened.

Perhaps most problematic is the notion that Mr. Hansen's decision not to appear somehow alters how the Court should perceive his health issues. Both probation and the government have pointed to this as a basis for changing their recommendations, arguing that his decision not to appear somehow suggests that Mr. Hansen does not really need the medical attention his doctors say he does. *See id.* at 8 ("[G]iven Mr. Hansen's decision to flee and his hope to live an anonymous and quiet life in hiding, we are questioning whether access to immediate healthcare is a significant consideration."); Gov't Suppl., Dkt. 476, at 3 (similar). But the facts do not support this change. Mr. Hansen remained within driving distance of his doctors—he only "fled" a few hours from where he had started—and he brought medication with him. And it may well have been his health concerns that led him not to appear in the first place, because he did not think he would live to see the end of his sentence, and so he wanted to live a few more days outside of prison. It was foolish; it was disrespectful to the Court and to probation. But it shows how sincerely he believes that he is in poor health and unlikely to live out his sentence. And it is not a reason to fundamentally alter the Court's approach to sentencing in this case.

## CONCLUSION

The government has provided very limited discovery about Mr. Hansen's decision not to appear at sentencing. There may yet be mitigating facts unknown to the defense. This, alone, is a reason to tread carefully in assessing the significance of Mr. Hansen's decision not to appear. Atop of that, however, is the evidence that has been provided suggesting that this was not some calculated,

BERNARD ROSS HANSEN'S
SUPPLEMENTAL SENTENCING MEMORANDUM
(Case No. CR18-0092 RAJ) - 4

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

serious effort to evade the law, but merely a foolish and desperate act by a man who felt his life was over. We therefore respectfully submit that the Court should not significantly alter its approach to sentencing in this case.

DATED this 31st day of May, 2022.

CALFO EAKES LLP

By  *s/ Henry C. Phillips*
Angelo J. Calfo, WSBA #27079
Henry C. Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: (206) 407-2200
Fax: (206) 407-2278
Email: angeloc@calfoeakes.com
henryp@calfoeakes.com

*Attorneys for Defendant Bernard Ross Hansen*

BERNARD ROSS HANSEN'S
SUPPLEMENTAL SENTENCING MEMORANDUM
(Case No. CR18-0092 RAJ) - 5

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278